STEVEN MILLER & another[1] *vs.* MILTON HOSPITAL
& MEDICAL CENTER, INC., & another.[2]

No. 99-P-2114.

Norfolk. January 7, 2002. - April 12, 2002.

*Present:* PERRETTA, DUFFLY, & GREEN, JJ.

*Hospital,* Peer review. *Privileged Communication. Evidence,* Privileged communication. *Doctor,* Privileged communication. *Practice, Civil,* Summary judgment.

Where the defendants in a civil action failed to sustain their burden of establishing that a letter written by the defendant doctor to the defendant hospital was a proceeding, report, or record of a medical peer review committee to which the peer review privilege attached, the judge erred in granting motions for summary judgment. [498-501]

CIVIL ACTION commenced in the Superior Court Department on September 27, 1993.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment, and by *Patrick F. Brady,* J., on renewed motions for summary judgment.

*Stephen J. Lyons* for the plaintiffs.

*Joan Eldridge* for Milton Hospital & Medical Center, Inc.

*Carol A. Kelly* for Amitabha Ghosh Roy.

GREEN, J. The plaintiffs, Dr. Steven Miller and Physicians Emergency & Medical Care, P.C. (PEMC), sued Dr. Miller's former employer, Milton Hospital & Medical Center, Inc. (hospital), its president, George Geary, and its chief of surgery, Dr. Amitabha Roy, upon the hospital's failure to renew a contract for services entered into by Dr. Miller, as president of PEMC, and the hospital. On the day scheduled for trial, a judge of the Superior Court allowed the defendants' motions in limine

---

[1] Physicians Emergency & Medical Care, P.C.
[2] Amitabha Ghosh Roy.

to exclude, inter alia, a letter Dr. Roy wrote to Mr. Geary regarding a joint meeting of the departments of emergency medicine and of surgery, based on the judge's conclusion that the letter was a "proceeding, record or report" of a "medical peer review committee" under G. L. c. 111, § 204. Judgment thereafter entered in the defendants' favor on renewed motions for summary judgment, and the plaintiffs appealed.[3] Because we conclude that the record does not support the judge's decision to exclude the letter as a record or report of a "medical peer review committee," and as it is common ground that the letter, if admitted, would present material issues of fact that would preclude the entry of summary judgment on counts III, XI, XII, and XIII of the complaint, we vacate the judgments entered as to those counts and remand to the Superior Court for further proceedings. The judgments entered as to the other counts of the complaint are affirmed.

1. *Facts.*[4] In 1986, Dr. Miller, on behalf of PEMC, and the hospital entered into a contract (contract) under which PEMC was to provide emergency medical services to the hospital. Under the contract, Dr. Miller agreed to assume, as of April 1 of that year, the position of chief of emergency medicine of the hospital. The contract stated a term of three years but was subject to automatic renewal for one-year periods thereafter unless terminated by either party on six months' notice. Dr. Roy became the hospital's chief of surgery in March of 1987. In time, there developed between Dr. Roy and Dr. Miller a disagreement over who would provide follow-up surgical care for patients seen in the emergency room. The complaint alleges that Dr. Roy insisted that all surgical patients seen in the emergency room be referred to the hospital's surgical depart-

---

[3]The renewed summary judgment motions were directed to counts III, XI, XII, and XIII of the complaint. The present appeal challenges the allowance of the renewed summary judgment motions, as well as the entry of summary judgment dismissing count II on a previous motion. The plaintiffs' appeal does not challenge the entry of summary judgment dismissing certain of the plaintiffs' other claims. Mr. Geary is not a party to any of the remaining claims.

[4]The judge made no findings in support of his ruling on defendants' motions in limine. We summarize the undisputed facts so far as they appear from the record.

ment for follow-up care, and that Dr. Roy threatened to withhold backup surgical coverage for the emergency department unless Dr. Miller cooperated with the request for such referrals. The complaint further alleges that Dr. Roy's request for referrals was based on a desire to realize within the surgical department the fees generated by such follow-up care.

The disagreement between Drs. Miller and Roy over surgical referrals simmered before coming to a head at a joint meeting between the department of emergency medicine and the department of surgery, held on October 26, 1989. Both Dr. Miller and Dr. Roy attended the meeting. Following the meeting, Dr. Roy sent to Mr. Geary a letter, dated December 12, 1989. The pertinent text of the letter is set out in the margin.[5]

On October 1, 1990, Mr. Geary sent to Dr. Miller a letter, advising Dr. Miller that the contract would terminate without

---

[5] "We have had our Surgical meeting in the month of October which involved a common meeting of the General Surgeons, Orthopedic Surgeons, Plastic Surgeons, that is those who cover the Emergency Room as back-up surgeons, and the Staff of the Emergency Room. In the combined meeting of the Surgical Staff and the Emergency Room we primarily discussed the problems between the General Surgeons and the Emergency Room physicians. The problems that the General Surgeons faced were pointed out to Dr. Miller and they are as follows:

"1. The follow-up of the surgical patients to the Emergency Room.

"2. Transfer of patients out of the Emergency Room[.]

"3. The quality of care issue.

"In the discussion of the follow-up of the surgical patients, it was the unanimous decision of the Surgeons that they wanted 100% follow-up in their offices of all surgical patients that needed to be followed up. These are the patients who come to the E.R. who do not have any private physicians. However, Dr. Miller did not answer satisfactorily to this point and after deliberating one hour, we could not go beyond this point and at that point I dissolved the meeting.

"Talking then to the Surgeons, they felt that if the practice continues then they probably will withdraw back-up coverage of surgery in the Emergency Room.

"Even though I don't see any immediate problem, however, I must point this out to you that there may come a time when the Emergency Room, and in turn the Hospital, may not have any Surgical back-up coverage unless Dr. Miller wants to change his mind and listen to, and abide by the requests of the Surgeons who are covering the Emergency Room as back-up surgeons."

renewal on March 31, 1991.[6]

The by-laws of the hospital's medical staff, as in effect on October 26, 1989, established the various clinical departments of the hospital, including the surgery and emergency departments. Section 4.3 of the by-laws assigns to each clinical department the responsibility (among other functions) to "evaluate medical care, by conducting a primary retrospective review of completed records of discharged patients and other pertinent Departmental sources of medical information relating to patient care" and to "meet as a separate group to review and analyze on a peer-group basis the clinical work of the Department." Each department is to meet monthly "to review and evaluate the clinical work of the Department and to discuss any other matters concerning the Department." The parties agree that the function of each hospital department includes peer review and that meetings of each department could cover both clinical and administrative matters unrelated to peer review.

2. *Discussion.* Dr. Roy and the hospital contend that, as ruled by the judge below, the December 12, 1989, letter is a "proceeding, report or record" of a "medical peer review committee" under G. L. c. 111, § 204. Under that section, as a general matter, such materials are "confidential and shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding."[7] G. L. c. 111, § 204(a), as appearing in St. 1987, c. 467, § 3.

The existence of a claimed privilege is essentially a question

---

[6]Under a side letter to the 1986 contract, Dr. Miller held a right of first refusal for six months following termination. However, he lost his rights under the right of first refusal by operation of a further letter agreement signed on March 28, 1990. Count III of the complaint alleges that the hospital deceived Dr. Miller into signing the March 28, 1990, letter. Though the motion judge cited the unambiguous terms of the letter agreement as an independent ground to support entry of summary judgment on that count, our review of the record persuades us that there is a genuine issue of fact of whether the hospital's representative misled Dr. Miller about the effect of the letter. By contrast, we agree with the motion judge who allowed the previous motion for summary judgment as to count II, on the ground that there was no breach of an implied covenant of good faith under the contract because the contract was not in effect at the time of the acts alleged to constitute a breach. See *Levenson* v. *L.M.I. Realty Corp.,* 31 Mass. App. Ct. 127, 131 (1991).

[7]Dr. Miller does not contend that the December 12 letter is within any of the exceptions set forth in G. L. c. 111, § 204(a) or 204(b). The defendants do

of fact for the trial judge. See *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 113 (1997); *Commonwealth* v. *Pare*, 427 Mass. 427, 430 (1998). As the party asserting the privilege, the defendants have the burden to establish that it applies. See *Matter of the Reorganization of Elec. Mut. Liab. Ins. Co. (Bermuda)*, 425 Mass. 419, 421 (1997).

In the medical peer review context, the court must first determine whether the records for which the privilege is claimed are on their face such as clearly fall within the privilege. See *Carr* v. *Howard*, 426 Mass. 514, 529 (1998). If the question is in doubt on the face of the materials, the court should then consider the evidence proffered by the party asserting the privilege. *Ibid.* In camera review of the materials is often not necessary, however, because "[d]etermining whether the medical peer review privilege applies turns on the way in which a document was created and the purpose for which it was used, not on its content." *Id.* at 531. Specifically, where a privilege is claimed under G. L. c. 111, § 204, the principal focus of the inquiry is on whether the document was created by, for or otherwise as a result of a "medical peer review committee."

As defined by the statute, a "medical peer review committee" is (for purposes relevant here):

"a committee of . . . a medical staff of a . . . licensed hospital . . . , provided the medical staff operates pursuant to written by-laws that have been approved by the governing board of the hospital . . . , which committee has as its function the evaluation or improvement of the quality of health care rendered by providers of health care services, the determination whether health care services were performed in compliance with the applicable standards of care, the determination whether the cost of health care services were performed in compliance with the applicable standards of care, determination [*sic*] whether the cost of the health care service rendered was considered reasonable by the providers of health services in the area, the determination of whether a health care provider's actions call into question such health care provider's fitness to provide health care services, or the evaluation and as-

---

not contend that the December 12 letter is covered alternatively by G. L. c. 111, § 205.

sistance of health care providers impaired or allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise . . . ."

G. L. c. 111, § 1, as appearing in St. 1987, c. 579, § 1.[8]

As described above, the hospital by-laws include within the role of the emergency medicine department and the surgery department the evaluation of the medical care provided by each department. However, each department also is responsible for monitoring various administrative and financial matters unrelated to peer review. Accordingly, the question whether the December 12 letter is protected under the medical peer review privilege is not resolved simply by reference to the constituency and charter of the two departments; the question is whether the joint meeting of the two departments, convened on October 26, 1989, engaged the departments in a medical peer review function.

Unfortunately, the December 12 letter itself does not suffice to resolve whether its subject was medical peer review, and the defendants have submitted no additional evidence to support their claim of privilege (other than the hospital by-laws which, as noted, do not resolve the issue). On the face of the letter alone, and without benefit of findings by the judge below, we are unable to conclude on the present record whether the December 12 letter described a meeting to discuss an effort by the surgery department to assure a lucrative source of referral business from the emergency department (as characterized by Dr. Miller) or (as described by the defendants) to consider problems with the quality of patient care which could result from a refusal by the emergency department to refer patients to the surgery department for follow-up care.[9] Accordingly, we conclude that the defendants have failed to sustain their burden to establish that the December 12 letter is a "proceeding, report

---

[8]The statute defines "health care provider" to include doctors, registered nurses, and licensed hospitals. *Ibid.*

[9]In this regard, we acknowledge, but consider unilluminating, the reference in the December 12 letter to "the quality of care issue." There is no indication in the December 12 letter (or elsewhere in the record) what "the quality of care issue" was, much less that it was discussed at the meeting. The mere insertion of the words "quality of care" into a document does not cloak the document with the peer review privilege.

or record" of a "medical peer review committee" to which the peer review privilege attaches, with the result that the judgments entered on counts III, XI, XII, and XIII must be vacated.

We offer the following additional guidance bearing on resolution of the peer review question in the proceedings on remand.

First, to the extent the December 12 letter qualifies as a peer review record, the defendants have not (contrary to the plaintiffs' contention) "waived" the right to invoke the privilege by "disclosing" it to Dr. Miller. The plaintiffs' reliance on cases finding waiver of a privilege, predominantly in the attorney-client context, is misplaced, most fundamentally because, as Dr. Miller was a participant in the joint departmental meeting, the subject matter of the meeting was never confidential as to him. The peer review privilege does not rest on its threshold confidentiality as between the parties to the litigation, but instead is designed to foster a candid exchange of information regarding the quality of medical care. See *Swatch* v. *Treat*, 41 Mass. App. Ct. 559, 563 (1996).

Second, as the court in *Carr* observed, the applicability of the medical peer review privilege to particular documents frequently will be clear from the purpose for which, and process by which, the documents were prepared. *Carr* v. *Howard*, 426 Mass. at 531. However, where (as here) the applicability of the privilege is less than clear from the facts, or where the record permits multiple alternative determinations of facts bearing on the privilege question, findings by the trial judge of subsidiary facts supporting the determination of the privilege question would assist appellate review. Cf. *Commonwealth* v. *Bishop*, 416 Mass. 169, 181 (1993) (establishing protocol for "stage one" determination of existence of privilege, before determining whether exception applies).

The judgments entered on counts III, XI, XII, and XIII are vacated, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion. The judgments entered as to the other counts of the complaint are affirmed.

*So ordered.*