Leibensperger, Edward P.,
J. The Massachusetts Board of Registration in Medicine (“Board”) seeks to enforce an investigative subpoena issued to Sturdy Memorial Hospital, Inc. (“Sturdy”) seeking production of documents related to John Doe, D.O.[1] Sturdy objects to producing certain handwritten notes (the “Notes”) created by its medical director concerning Dr. Doe on the ground that the Notes are protected from discovery by the Board pursuant to the medical peer review privilege contained in G.L.c. Ill, §204(a). The Board, in contrast, asserts that the Notes are protected by the medical peer review privilege only insofar as allowed by G.L.c. Ill, §205(b) and, therefore, the Notes must be produced to the Board. Thus, the issue presented is whether the Notes are protected by §204(a) or §205(b). Both parties reference the decision of the Supreme Judicial Court in Board of Registration in Medicine v. Hallmark Health Corporation, 454 Mass. 498 (2009), noting that §204(a) peer review materials are not discoverable by the Board at this stage of its proceedings but that §205(b) peer review materials are discoverable by the Board.
I. Background
The Board received complaints about Dr. Doe involving allegations of professional misconduct and rude, disruptive and unprofessional behavior. Pursuant to G.L.c. 112, §5, the Board is mandated to investigate all complaints concerning a licensed physician and is authorized to issue a subpoena in the course of its investigation. On September 21, 2010, the Board issued a subpoena to Sturdy seeking production of documents relating to Dr. Doe. In particular, the subpoena, in paragraph 2, sought “[a]ll documents relating to any incident reports which make reference to [John Doe] and the investigation thereof.” In response, Sturdy objected to the subpoena and produced a privilege log. In the privilege log, Sturdy claimed that certain documents were protected from discoveiy by the medical peer review privilege.
On January 18, 2011, the Board interviewed Sturdy’s medical director, Dr. Daniel Pietro. In the interview, Dr. Pietro disclosed that he possessed a file with information about his independent investigation into reports of, among other things, rudeness and disruptive behavior on the part of Dr. Doe. A subsequent privilege log produced by Sturdy lists, in response to paragraph 2 of the subpoena, “handwritten notes” of “approximately 17 pages” constituting “notes generated during medical director’s activities as Patient Care Assessment Coordinator and part of the peer review process.” These 17 pages are the Notes at issue in this proceeding. Sturdy objects to producing the Notes and asserts that the Notes are “core materials” of a peer review process that should be afforded the full protection of §204(a).
Sturdy submits the affidavit of Dr. Daniel Pietro, Medical Director and Patient Care Assessment Coordinator, in support of its objection to the subpoena. Dr. Pietro states that Sturdy maintains a Patient Care Assessment Program (“PCAP”) as required by 243 C.M.R. §§3.07 and 3.09. The PCAP was adopted in accordance with Massachusetts law and regulations promulgated by the Board. Sturdy includes in its bylaws a specific section, Article IX, devoted to the PCAP. Pursuant to Sturdy’s bylaws, the medical director oversees the PCAP and serves as the Patient Care Assessment Coordinator (“PCAC”). He also serves as chairman of the Clinical Risk Management Committee. As PCAC, he routinely investigates issues for the purposes of evaluation and improvement of healthcare. During his evaluations, he creates notes concurrent with his investigation.
The Notes at issue pertaining to Dr. Doe “were created for the purpose of the evaluation and improvement of healthcare rendered by the medical staff. . . [and] were created by me, for and as a result of my position as the Patient Care Assessment Coordinator and .Chairman of the Clinical Risk Management Committee, both of which are peer review functions as outlined by the Bylaws Article IX. Bylaws, Sections 9.1-9.9, pp. 29-35.” Affidavit of Daniel Pietro, M.D., ¶¶13, 14.
Dr. Pietro also makes reference to Section 9.4 of the bylaws concerning reports to the PCAC by a member of the medical or allied clinical staff of conduct by a physician that indicates incompetency or that might be inconsistent with' or harmful to good patient care or safety. Under that section, Dr. Pietro, as PCAC, may request such a report to be in writing. If the report is not in writing, the PCAC “shall” document the report in writing and such documentation shall be accorded the confidentiality provided by the laws of Massachusetts to the records of a medical peer review committee. While Dr. Pietro does not state explicitly that the Notes were created in response to a report under Section 9.4, he concludes by saying the Notes “were created by me for the peer review investigation in the course of my duties as the Patient Care Assessment Coordinator for the purpose of conducting an investigation on behalf of a medical peer review committee.” Id. at ¶17.
Dr. Pietro does not say that he was requested by a medical peer review committee to make the Notes at issue. There is also no evidence in the record to suggest that a medical peer review committee was ever convened to consider Dr. Doe or the Notes prepared by Dr. Pietro. Instead, Dr. Pietro’s affidavit malees clear that he was functioning as PCAC when he made the Notes in anticipation that the Notes might, at some future time, be considered by a medical peer review committee.
*254 II. Discussion
The burden of proving that the withheld Notes are protected by the medical peer review privilege in §204(a) falls upon the objecting party, Sturdy. Hallmark, 454 Mass. at 510. “In determining whether a medical peer review privilege applies in a particular circumstance, [the Court looks] to ‘the way in which a document was created and the purpose for which it was used, not... its content.’ ” Id. at 509, citing Carr v. Howard, 426 Mass. 514, 531 (1998).
As described in Hallmark, the applicable statutory scheme is as follows. Section 204(a) provides that “the proceedings, reports and records of a medical peer review committee shall be confidential . . . [and] shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding, except proceedings held by the boards of registration in medicine ...” The exception for the Board pertains to the circumstance where the Board had initiated a formal administrative proceeding under Mass. G.L.c. 30A. In the present case, it is stipulated that the Board has not initiated a formal administrative proceeding concerning Dr. Doe. Thus, if the Notes are protected by §204(a), the subpoena must be quashed and the Board’s action dismissed.
Section 205(b) provides that “[information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees, including incident reports required to be furnished to the board of registration in medicine or any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals for the purpose of providing credentialing information to health care entities shall be deemed to be proceedings, reports or records of a medical peer review committee for purposes of section two hundred and four of this chapter and may be so designated by the patient care assessment coordinator; provided, however, that such information and records so designated by the patient care assessment coordinator may be inspected, maintained and utilized by the board of registration in medicine, including but not limited to its data repository and disciplinary unit. ” Accordingly, if the Notes fall within the description of §205(b), the Board’s subpoena must be enforced and Sturdy must produce the Notes.[2]
Sturdy argues that the Notes were created by, for, or otherwise as a result of a medical peer review committee. Sturdy cites Hallmark, 454 Mass. at 509, as requiring exactly that purpose for document creation as sufficient ground for the document falling within the protection of §204(a). The facts submitted, however, establish, at most, that the Notes were created “for” a medical peer review committee in that there is no evidence that a medical peer review committee convened, generated any record or rendered any decision.
The language of §205(b) appears directly applicable to the facts concerning the purpose and preparation of the Notes. That section anticipates that there will be “records” generated pursuant to a PCAP (like Sturdy’s) that will be necessary to the work product of a medical peer review committee. The statute even deems such documents as “proceedings, reports or records” of the medical peer review committee but specifically makes such information and records available to the Board.
In Hallmark, the Court addressed the effect of §205(b) on the test of “by, for, or otherwise as a result of a medical peer review committee” for privileged materials under §204(a). The Court stated that “[u]nder that formulation, while the work product of the various committees involved in credentialing at Hallmark — e.g., minutes from meetings, reports or recommendations generated by or for the committee— are protected by §204(a), documents used by such committees are not necessarily similarly protected.” Hallmark, 454 Mass. at 509-10. The Court then cited Carr v. Howard, 426 Mass. at 522, n.7, where it was noted that §204(a) requires evidence that the materials at issue are not merely documents presented to a committee in connection with its proceedings but are, instead, themselves, proceedings, reports and records of a peer review committee. “Section 204 does not protect information generated by other components of the QPCAP system or the ‘raw materials’ relied on by a [peer review committee] if obtained from other sources.” Beth Israel Hospital Association v. Board of Registration in Medicine, 401 Mass. 172, 183 (1987).
Based on the affidavit of Dr. Pietro, the Notes in question here constitute the raw materials of an investigation conducted by Dr. Pietro that may, someday, be considered by a medical peer review committee. He created the Notes in his capacity of PCAC, a position established by the PCAP required by the Board. The Notes may, at some point, be necessary work product of a medical peer review committee. The description of the creation of the Notes, and the purpose for which the Notes were created, make the Notes a record which is protected by §205(b), but not §204(a).
III. Conclusion
For the reasons stated above, Sturdy’s motion to dismiss is DENIED, and the Board’s motion for an order to produce the Notes is ALLOWED. Sturdy is hereby ORDERED to produce the Notes at issue within fifteen (15) days.

The Board moved to use a pseudonym for the physician who is the subject of the investigation because the Board is required to preserve confidentiality during an open investigation. G.L.c. 112, §5. The motion is allowed.

Under §205(b), documents that must be produced to the Board remain confidential and not subject to subpoena, discovery or introduction into evidence in proceedings not conducted by the Board.