Lauriat, Peter M., J.
INTRODUCTION
The Board of Registration in Medicine (the “Board”) brought this action against the defendants, Hallmark Health Corporation, Lawrence Memorial Hospital, Melrose-Wakefield Hospital, (collectively, “Hallmark”) and Winchester Hospital, seeking access to materials located in a medical doctor’s credentialing files from the hospitals in connection with the Board’s investigation of the doctor, Dr. John Doe (“Dr. Doe”), prior to the commencement of an adjudicatory proceeding pursuant to G.L.c. 30A.[1] A Superior Court judge awarded summary judgment to Hallmark, and the Board appealed. The Supreme Judicial Court vacated the summary judgment decision and required the court to conduct an individualized review of each document which Hallmark claims is privileged. For the following reasons, Hallmark is ordered to produce to the Board the documents identified in this Memorandum of Decision within fifteen days of the date of the Order set forth below.
BACKGROUND
This case stems from an investigation initiated by the disciplinary unit of the Board in response to a patient complaint and subsequent information which suggested that Dr. Doe had fraudulently obtained a renewal of his medical license by failing to report criminal charges on his medical license renewal applications. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. 498, 500 (2009). The Board also determined that an investigation was required as to whether Dr. Doe practiced medicine while impaired by alcohol or drugs. Id. On Februaiy 13, 2007, the Board issued subpoenas to the defendant hospitals seeking documents related to Dr. Doe’s credentialing, employment, and competence to practice medicine. Id. The Board also sought incident reports and complaints related to Dr. Doe. The defendant hospitals refused to produce these documents and asserted that they are protected under the medical peer review privilege.
Pursuant to Hallmark’s medical staff credentialing policy, physicians seeking clinical privileges at Hallmark are required to apply for an initial appointment and must apply for reappointment at periodic intervals of not greater than two years. Board of Registration in *395 Med. v. Hallmark Health Corp., 454 Mass. at 502. Physicians seeking an initial appointment must provide information such as prior education, training, experience, and licensure. Id. Physicians are also required to disclose potentially harmful information such as whether the applicant has ever been a criminal defendant, lost a professional license, had clinical privileges withdrawn, or been involved in any professional misconduct proceedings. Id. Incident reports or complaints regarding a physician become part of that physician’s credentialing file. Id. CHEM Central Credentialing Data Service (“CHEM Central”) is a department of Hallmark Health System, Inc. that performs administrative aspects of the credentialing process.
“The credentialing process at Hallmark involves the medical staff credentials committee, the medical council committee, and the board of trustees or its patient care assessment committee, each of which has been designated by Hallmark as a peer review committee.” Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 502. The Board did not contest Hallmark’s designation of these committees as peer review committees. Id. Hallmark’s credentialing policy directly stems from the risk management and quality assurance regulations established by the Board. “Documents in a physician’s credentialing folders are generated by the credentials office and reviewed by members of the credentials committee, who send their recommendation to the medical council, which in turn makes a recommendation to the board of trustees. The board of trustees or its designee makes the final decision on credentialing.” Id. The Supreme Judicial Court recounted the factual background of this case and explained that:
At issue in this matter are the contents of Dr. Doe’s credentialing files at Hallmark for the years 2000, 2001, 2003, and 2005. All of the documents contained therein were, according to Hallmark’s chief medical officer, Dr. Mike H. Summerer, obtained in conjunction with the credentialing process at Hallmark. According to Hallmark, the files are similar in content: each contains, among other things, a letter to Dr. Doe from Hallmark regarding his application for reappointment to the Hallmark medical staff, an application for reappointment submitted by Dr. Doe, insurance information (including malpractice claims), licensing information, controlled substances certifications, and professional references and evaluations. The folders also contain Dr. Doe’s curriculum vitae and a copy of his medical license, as well as materials generated by the board, including a document regarding physician verification data and a registration renewal application for the board.
Id. at 502-03.
On August 11, 2009, the Supreme Judicial Court remanded this action to this court, “for an individualized consideration (of) whether each of the documents listed on Hallmark’s privilege log is protected by either [G.L.c. Ill, §204(a) or G.L.c. Ill, §205(b)], bearing in mind that the burden is on Hallmark to establish that each document is privileged.”[2] Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 510. The Supreme Judicial Court determined that because G.L.c. Ill, §205(b), expressly provides the Board access to credentialing documents protected under that section prior to the commencement of an adjudicatory proceeding against the physician, a previous summary judgment decision in favor of the defendants had to be vacated and the matter remanded to the Superior Court. Id. at 498-500.
On September 28, 2009, the court ordered Hallmark to submit a detailed privilege log to it, with a description of each document for which Hallmark claimed protection under either G.L.c. Ill, §204(a) or G.L.c. Ill, §205(b), and to immediately produce all subpoenaed documents to the Board for which it did not claim protection. In response, Hallmark submitted a forty-four-page privilege log dated October 8, 2009 (the “Privilege Log”), along with various attached exhibits, in an effort to establish that the documents it was still withholding were protected pursuant to the medical peer review privilege, under either G.L.c. Ill, §204(a) or G.L.c. Ill, §205(b), and were therefore, beyond the reach of the Board at this time.[3] The Board acknowledges that Hallmark has released some documents for which it does not claim a privilege, but contends that it is still entitled to most of the documents set forth in Hallmark’s Privilege Log.
DISCUSSION
General Laws c. Ill, §204(a), states:
Except as otherwise provided in this section, the proceedings, reports and records of a medical peer review committee shall be confidential and ... shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding, except proceedings held by the board[ ] of registration in medicine . . .
General Laws c. Ill, §205(b), provides that:
“Information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees, including incident reports required to be furnished to the board of registration in medicine or any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals for the purpose of providing credentialing information to health care entities shall be deemed to be proceedings, reports or records of a medical peer review committee for purposes of [G.L.c. Ill, §204,] and may be so designated by the patient care assess *396 ment coordinator; provided, however, that such information and records so designated by the patient care assessment coordinator may be inspected, maintained and utilized by the board of registration in medicine, including but not limited to its data repository and disciplinary unit" (Emphasis added.) “Such information and records inspected, maintained or utilized by the board of registration in medicine shall remain confidential, and not subject to subpoena, discovery or introduction into evidence.”
G.L.c. Ill, §205(b).
In its decision, the Supreme Judicial Court attempted to clarify the distinction between documents protected under §204(a) or §205(b).[4] Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 507-08. The Supreme Judicial Court explained that:
In one important respect, however, the protections of §205(b) are not coextensive with those afforded by §204(a). Section 205(b) specifically provides that documents protected by that statute “may be inspected, maintained and utilized by the [board], including but not limited to its data repository and disciplinary unit,” and it does not require that such access be conditioned on the commencement of a formal adjudicatory proceeding. Thus, while §§204(a) and 205(b) both shield information from the general public and other third parties to the same extent, only information protected by §204(a) is shielded from the board prior to the commencement of a G.L.c. 30A proceeding.
Id. (emphasis added). Thus, the Supreme Judicial Court explicitly rejected Hallmark’s argument that §205(b) affords the “full protections” of §204(a) and disagreed with Hallmark’s assertion that “all of the materials in Dr. Doe’s credentialing files are the core peer review ‘proceedings, reports and records’ that are protected by §204(a) and that the entire contents of those files are therefore shielded from the board at this stage of its investigation." Id. at 508-09.
In determining whether a medical peer review privilege applies in a particular circumstance, this court is required to review “the way in which a document was created and the purpose for which it was used, not ... its content.” Carr v. Howard, 426 Mass. 514, 531 (1998). Consequently, the proper inquiry as to whether a particular document qualifies for protection under §204(a) is whether it was created “by, for, or otherwise as a result of a ‘medical peer review committee.’ ” Miller v. Milton Hosp. & Med. Ctr., Inc., 54 Mass.App.Ct. 495, 499 (2002). “Under that formulation, while the work product of the various committees involved in credentialing at Hallmark — e.g., minutes from meetings, reports, or recommendations generated by or for the committees — are protected by §204(a), documents used by such committees are not necessarily similarly protected.” Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 509-10 (emphasis added).
The Supreme Judicial Court remanded this case for an individualized consideration of whether each of the documents listed on Hallmark’s privilege log is protected by either G.L.c. Ill, §204(a) or G.L.c. Ill, §205(b).[5] Hallmark has divided the Privilege Log into eleven individual sections. Various credentialing related documents from the years 2000, 2001, 2003, and 2005 are organized in each of these sections.
In its written opposition to Hallmark’s Privilege Log, the Board concedes that the documents listed in Section VI of the Privilege Log (Credentials Committee Minutes) are protected under G.L.c. Ill, §204(a). Thus, it is undisputed that the meeting minutes of the credentials committee contained in Section VI of the Privilege Log are unavailable to the Board at this stage of its investigation of Dr. Doe.[6] Indeed, the Privilege Log establishes that the meeting minutes contained in Section VI are created by the credentials committee members and are thus the work product of a peer review committee at Hallmark. At this time, Hallmark is not required to produce the documents contained in Section VI of the Privilege Log to the Board because these documents are privileged solely under G.L.c. Ill, §204(a).
As to the remaining documents contained in the Privilege Log and in consideration of the court’s individualized determination of whether each document is protected under G.L.c. Ill, §204(a) or G.L.c. Ill, §205(b), the court will address the documents contained in each section of the Privilege Log in turn.[7] And, as noted above, Hallmark has the burden of establishing that each document is privileged. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 510.
Section I of the Privilege Log
Section I of the Privilege Log describes documents relating to Dr. Doe’s reapplication for credentials at Hallmark in the years 2000, 2001, 2003, and 2005. These documents are forms created by Hallmark or standard forms created by the Commonwealth of Massachusetts and filled out by Dr. Doe. Hallmark asserts that the documents contained in Section I are protected under G.L.c. Ill, §204(a) and G.L.c. Ill, §204(c).[8] The Board, however, asserts that the documents contained in Section I are raw materials that are provided to the credentials committee and are not subject to protection under G.L.c. Ill, §204(a). The Board contends that Hallmark has improperly classified these documents, which the Board asserts are only protected under G.L.c. Ill, §205(b), if they are protected at all, and not by G.L.c. Ill, §204(a), and that Hallmark has not demonstrated that these documents were not merely presented to a committee in connection with its proceedings, but were themselves, proceedings, reports, and records of a peer review committee under G.L.c. Ill, §204(a).[9]
*397 After an individualized review of the descriptions of each document contained in Section I of the Privilege Log, which included an explanation of how the documents were used, this court is satisfied that none of the documents contained in Section I are privileged under G.L.c. Ill, §204(a), and therefore, all of these documents must be provided to the Board. See Miller v. Milton Hosp. & Med. Ctr., Inc., 54 Mass.App.Ct. at 499 (recognizing that the principal focus as to whether a document qualifies for protection under §204(a) is whether it was created by, for, or otherwise as a result of a medical peer review committee). See also Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 509-10 (recognizing that documents used by credentials committee are not necessarily protected). While Dr. Doe did not create the actual forms, he provided the necessary information on each document described in Section I of the Privilege Log for the purpose of applying for reappointment to the medical staff at the hospital.[10]
The reapplication forms described in Section I appear to consist of “(i]nformation and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees.” G.L.c. Ill, §205(b). Here, Hallmark has failed to sustain its burden to establish that each of the documents in Section I are proceedings, reports, and records of a peer review committee that are protected under G.L.c. Ill, §204(a). These documents are only protected under G.L.c. Ill, §205(b), as they consist of information collected by Hallmark which is necessary to comply with risk management and quality assurance programs established by the Board, and they are “less central” to the peer review process. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 506-08. Dr. Doe’s reapplication materials in Section I of the Privilege Log are subject to protection under G.L.c. Ill, §205(b), but they are not the core peer review proceedings, reports and records that are protected by §204(a). Therefore, the Board is entitled to the documents described in Section I of the Privilege Log at this stage of its investigation — prior to the commencement of a potential adjudicatory proceeding pursuant to G.L.c. 30A . See id.
Section II of the Privilege Log
Section II of the Privilege Log contains documents described as the department chiefs reappointment status forms from the years 2000, 2003, and 2005. Hallmark asserts that these documents are privileged under G.L.c. Ill, §204(a).[11] Hallmark notes that its credentials committee does not actually begin its work until the committee receives the department chair’s reappointment status form, the subject of Section II of the Privilege Log, and the chair’s recommendations as to the clinical privileges to be granted. Hallmark claims that the reappointment status forms are sent, along with other documents, directly by CHEM Central to the chairperson of the hospital clinical department in which the reapplicant holds privileges. Eventually, the department chairperson is required to provide the credentials committee with a written report concerning each individual seeking reappointment. The credentials committees may consider the documents described in Section II of the Privilege Log.
Here, the reappointment status forms contained in Section II of the Privilege Log consist of “(i]nformation and records which are necessary to comply with risk management and qualiiy assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees.” G.L.c. Ill, §205(b). These documents appear to be less central to the peer review process because they were primarily relied upon by the applicable clinical department chairperson. Therefore, the documents contained in Section II of the Privilege Log are not subject to protection under G.L.c. Ill, §204(a), but they are privileged under G.L.c. Ill, §205(b). See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 509-10. Accordingly, the documents in Section II must be provided to the Board.
Section III of the Privilege Log
Hallmark lists the documents described in Section III of the Privilege Log as delineation of privileges forms from the years 2000, 2001, 2003, and 2005. Each document described in Section III was authored by Dr. Doe and addressed to the chairperson of the applicable hospital department to which Dr. Doe sought privileges. Dr. Doe used these delineation of privileges forms to designate to the applicable chairperson of the department the specific clinical privileges that Dr. Doe sought. Hallmark notes in the Privilege Log that Dr. Doe sought internal medicine privileges. Hallmark asserts that these documents are privileged under G.L.c. Ill, §204(a).
The delineation of privileges forms contained in Section III of the Privilege Log are not protected under G.L.c. Ill, §204(a) as Hallmark claims. The documents described in Section III were relied upon by the chairperson of the internal medicine department, not directly by the credentials committee. Even if the credentials committee directly relied on these documents, the delineation of privileges forms are not the core peer review proceedings, reports and records that are protected by G.L.c. Ill, §204(a). As such, the documents described in Section III of the Privilege Log are protected under G.L.c. Ill, §205(b), but are not subject to protection under G.L.c. Ill, §204(a) and must be produced to the Board.
Section IV of the Privilege Log
Hallmark describes the documents contained in Section IV of the Privilege Log as outside licensed healthcare facility verification/evaluation forms for *398 the credentialing years 2001, 2003, and 2005. The documents in Section IV were authored by medical staff members at facilities where Dr. Doe reported holding privileges. Essentially, these documents are summaries of Dr. Doe’s performance and disciplinary history at various hospitals. The healthcare facilities returned the forms to the credentialing department. Then, Hallmark’s credentialing department forwarded the verification or evaluation requests from other licensed healthcare facilities where Dr. Doe held staff privileges to the applicable clinical department chairperson. The applicable department chairperson considered the verification/evaluation forms along with other documents, such as Dr. Doe’s application and the department chiefs reappointment status form. The department chair then created a report for the credentials committee, and the committee also considered these documents. Hallmark asserts that the documents described in Section IV are privileged under G.L.c. Ill, §204(a) and G.L.c. Ill, §204(c).[12]
Here, the outside licensed healthcare facility verification/evaluation forms described in Section IV of the Privilege Log consist of “(¡information and records which are necessaiy to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees.” G.L.c. Ill, §205(b). The documents described in Section IV are not generated by Hallmark’s credentials committee. Instead, the Section IV documents are credentialing items that are undoubtedly necessary to the work product of Hallmark’s credentials committee. Accordingly, the documents described in Section IV of the Privilege Log are protected under G.L.c. Ill, §205(b), and not G.L.c. Ill, §204(a) as Hallmark claims, and must be produced to the Board at this stage of its investigation.
Section V. of the Privilege Log
Section V of the Privilege Log describes Dr. Doe’s professional reference evaluations from the credentialing years 2001, 2003, and 2005. Dr. Doe listed various licensed physicians as references on his reapplication forms. The documents described in Section V are the references created by these physicians regarding Dr. Doe’s reapplication for privileges. CHEM Central had a role in gathering the information from Dr. Doe’s professional references. Hallmark notes that the references were generated specifically for the credentialing committees at Hallmark. The references are forwarded to the applicable department chair and are also considered by the credentials committee for use during its deliberations.
Here, the professional reference evaluations described in Section V of the Privilege Log consist of “[ijnformation and records which are necessaiy to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessaiy to the work product of medical peer review committees." G.L.c. Ill, §205(b). The applicable department chairperson relied on the reference evaluations and so did Hallmark’s credentialing committee. These credentialing items, however, are not subject to protection under G.L.c. Ill, §204(a) (they were not created by a medical peer review committee), but they are protected under G.L.c. Ill, §205(b). See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 507-09 (rejecting Hallmark’s argument that all of Dr. Doe’s credentialing files are protected under G.L.c. Ill, §204(a)). After an individualized review of the description of each document set forth in Section V of the Privilege Log, the court is satisfied that all of the documents in Section V must be produced to the Board at this stage of its investigation.
Section VII of the Privilege Log
Hallmark describes the documents in Section VII of the Privilege Log as documents relating to actions by Hallmark’s board of trustees for the years 2000, 2001, 2003, and 2005. The various credentialing committees make recommendations for medical staff membership to Hallmark’s board of trustees. The documents described in Section VII were created by Hallmark’s board of trustees in order to document its decisions on physicians’ applications for credentialing.
Hallmark asserts that the documents described in Section VII are privileged under G.L.c. Ill, §204(a) and G.L.c. Ill, §204(c). In one sentence, Hallmark describes the basis for this claim of privilege as, “minutes of the Credentials Committee” that are reports and records of a medical peer review committee. Yet, the documents created by Hallmark’s board of trustees that are described in Section VII of the Privilege Log are probably not minutes of any kind, rather they are the formal decisions of the board of trustees regarding physicians’ applications for credentialing. Additionally, Hallmark has not established that the board of trustees qualifies as a medical peer review committee. Hallmark has not sustained its burden of establishing that each of the documents described in Section VII of the Privilege Log are protected under G.L.c. Ill, §204(a). Therefore, the documents described in Section VII must be produced to the Board.
Section VIII of the Privilege Log
Section VIII of the Privilege Log describes letters created by Hallmark’s president and chief medical officer for the years 2000, 2001, 2003, and 2005 that were sent to Dr. Doe. These letters from Hallmark’s president advise Dr. Doe of the credentialing committees’ decision on Dr. Doe’s reapplication for medical staff privileges. Hallmark’s president is an individual appointed by the board of trustees. The credentials committee forwards its credentialing recommendations through Hallmark’s president to the board of trustees.
Hallmark asserts that the letters described in Section VIII of the Privilege Log are protected under G.L.c. *399 111, §204(a) and argues that they are work product of the credentials committee. Hallmark has not sustained its burden of establishing that each of the letters described in Section VIII of the Privilege Log are protected under G.L.c. Ill, §204(a). These letters were created by Hallmark’s president and sent to Dr. Doe. They are not documents created directly by Hallmark’s credentials committee. At best, the letters consist of “[¡Information . . . which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees." G.L.c. Ill, §205(b). The letters described in Section VIII are credentialing items protected under G.L.c. Ill, §205(b) and must be produced to the Board.
Section IX of the Privilege Log
Section IX of the Privilege Log describes outside licensed healthcare facility verification/evaluation forms for the credentialing year 2000. These documents were created by medical staff directors at healthcare facilities where Dr. Doe reported holding privileges and were utilized by the credentials committee. The forms are responses to Hallmark’s request for information on Dr. Doe. Most of the documents were received by “CredentialsOnLine,” an outside credentialing service that forwarded requests for verification/evaluation forms to and received responses from various licensed health care facilities where Dr. Doe held privileges.
Hallmark contends that the verification/evaluation forms described in Section IX of the Privilege Log are protected under G.L.c. Ill, §§204(a), 204(c), and 205(b). In its written opposition to the Privilege Log, the Board argues that documents cannot be protected by both G.L.c. Ill, §204(a) and G.L.c. Ill, §205(b), as only documents not protected under §204(a) are protected by §205(b). The court agrees with the Board. See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 507-08. The verification/evaluation forms described in Section IX of the Privilege Log consist of “ [¡Information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical freer review committees.” G.L.c. Ill, §205(b). The documents described in Section IX are not generated by Hallmark’s credentials committee, but they are undoubtedly necessary to the work product of Hallmark’s credentials committee. Accordingly, the documents described in Section IX of the Privilege Log are protected solely under G.L.c. Ill, §205(b), and not G.L.c. Ill, §204(a) as Hallmark claims. The documents in Section IX of the Privilege Log must be produced to the Board at this stage of its investigation.
Section X of the Privilege Log
Section X of the Privilege Log describes professional reference evaluations from the credentialing year 2000. Various licensed physicians, identified by Dr. Doe on his reapplication for privileges, completed the evaluations and sent them to CredentialsOnLine. Hallmark notes that CredentialsOnLine provided credentialing services to it for two months in 2000. CredentialsOnLine assembled physicians’ information about licenses, gathered hospital reports, and obtained professional references as part of the credentialing process.
Hallmark claims that the professional reference evaluations for the credentialing year 2000, which are described in Section X of the Privilege Log, are protected under G.L.c. Ill, §§204(a), 204(c), and 205(b). The documents described in Section X are “ [¡Information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees . . . including . . . any information collected or compiled by a physician credentialing verification service.” G.L.c. Ill, §205(b). Consistent with this court’s reasoning regarding the documents described in Section v. and IX of the Privilege Log, which is discussed above, the documents contained in Sections X are not solely protected under G.L.c. Ill, §204(a), but the documents are subject to protection under G.L.c. Ill, §205(b). Thus, these documents must be produced to the Board.
Section XI of the Privilege Log
Finally, Section XI of the Privilege Log is entitled “Provider Profile” and seems to describe a form generated by CredentialsOnLine that was used to track document requests and the receipt of documents compiled by CredentialsOnLine. CredentialsOnLine printed out this Provider Profile on August 28,2000. The Provider Profile tracks the progress of documents obtained during the credentialing process. Hallmark argues that because the Provider Profile tracked some of the documents used by the credentials committee, the Provider Profile itself is privileged under G.L.c. Ill, §§204(a), 204(c), and 205(b). The court does not agree. Rather, the Provider Profile is a unquestionably a “record [ ] which [is] necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which [is] necessary to the work product of medical peer review committees” and is privileged under G.L.c. Ill, §205(b). See G.L.c. Ill, §205(b). Tire Provider Profile described in Section XI of the Privilege Log is not subject to sole protection under G.L.c. Ill, §204(a), and therefore, Hallmark must produce the document described in Section XI of the Privilege Log to the Board.
Conclusion
In short, except for the credentials committee meeting minutes contained in Section VI of the Privilege Log, the remaining documents described in the Privilege Log are credentialing items protected under G.L.c. Ill, §205(b) and all of these documents must be produced to the Board even prior to the commencement of an adjudicatory proceeding pursuant to G.L.c. 30A.[13] See G.L.c. Ill, §205(b) (recognizing that doc *400 uments the Board obtains pursuant to §205(b) “remain confidential, and not subject to subpoena, discovery or introduction into evidence”). See also Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 507-10; Beth Israel Hosp. Ass’n v. Board of Registration in Med., 401 Mass. at 183. To conclude otherwise would severely complicate the mission and responsibilities of the disciplinary unit of the Board and ignore the Legislature’s intent in creating §205(b). Moreover, the result of this court’s order is consistent with the principle that the Board has the primary responsibility for regulating the practice of medicine in order to promote the health, welfare, and safety of the public. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 505.
ORDER
For the foregoing reasons, the Defendants, Hallmark Health Corporation, Lawrence Memorial Hospital, and Melrose-Wakefield Hospital, are hereby ORDERED to produce all of the documents described in Sections I, II, III, IV, V, VII, VIII, IX, X, and XI of the Privilege Log dated October 8, 2009 to the Board of Registration in Medicine, within fifteen days of the date of this order.

Hallmark Health Corporation is the parent of Hallmark System, Inc., a licensed hospital facility with campuses that include the former Melrose-Wakefield and Lawrence Memorial Hospitals. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. 498, 501 (2009). Winchester Hospital is not affiliated with Hallmark. Dr. Doe’s true name is impounded.

The Supreme Judicial Court set forth the factual background and procedural history of this case in its decision. See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 500-04.

Nonetheless, the only documents to which the Board does not have access to at this stage of its investigation are those documents protected solely by G.L.c. Ill, §204(a) because the Board is indeed entitled to documents solely protected under G.L.c. Ill, §205(b) prior to the commencement of an adjudicatory proceeding against the physician. See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 508 (noting that “the unambiguous language of the statute leaves no doubt that the Legislature intended that the board would have access to materials protected only by §205(b)’j. The documents attached to the Privilege Log include an affidavit of Dr. Mike Summerer, chief medical officer at Hallmark, excerpts from Dr. Summerer’s deposition, and excerpts from Hallmark’s credentialing policy.

In Beth Israel Hosp. Ass’n v. Board of Registration in Med., 401 Mass. 172, 183 (1987), the Supreme Judicial Court noted: “(H)ospitals should make available to the board all incident reports, patient complaints, employee training materials, credentialing items, Patient Care Assessment Coordinator reports, and other items they are charged with generating.” Shortly after that decision, the Massachusetts Legislature enacted G.L.c. Ill, §205(b) in an effort to extend the peer review privilege to credentialing items. Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 507.

he Supreme Judicial Court observed that “[w]here the files include, among other things, Dr. Doe’s curriculum vitae and a copy of his medical license, as well as ‘information collected or compiled by a physician credentialing verification service,’ §205(b), it is clear enough that not all of those materials are ‘proceedings, reports and records' of a peer review committee, and that at least some of the materials should therefore be provided to the board.” Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 510.

Since the Board now concedes that the documents contained in Section VI are protected under G.L.c. Ill, §204(a), this court also determines that Hallmark’s credentials committee is in fact, a peer review committee within the meaning of G.L.c. Ill, §1.

As required by the Supreme Judicial Court, this court has conducted an individualized review of the description of each document listed in the ten remaining sections of the Privilege Log that are in dispute. The documents themselves have not been produced to or inspected by the court, even in camera.

None of the documents described in the Privilege Log are subject to protection under G.L.c. Ill, §204(c). Hallmark argues that the names of people that furnished information to a peer review committee cannot be disclosed to the Board. G.L.c. Ill, §204(c) states that “committee members may not be questioned in any proceeding about the identity of any person furnishing information or opinions to the committee, opinions formed by them as a result of such committee proceedings, or about the deliberations of such committee.” G.L.c. Ill, §204(c). In this case, the Board is not asking members of a credentialing committee to identify via testimony, witnesses who testified before the committee. Instead, the Board seeks documents that a credentialing committee used or relied upon. Thus, G.L.c. Ill, §204{c) is not applicable.

The Board makes this same general argument for all of the documents contained in Sections I through v. and Sections VIII through XI of the Privilege Log.

Hallmark lists CHEM Central as involved in compiling the information submitted by Dr. Doe for the year 2000. The documents in Section I provided Hallmark’s credentials committee with initial background information, which was obtained from Dr. Doe prior to the time that the credentials committee actually began its work. According to Hallmark’s credentials policy, no later than three months prior to the end of a current appointment period, the medical staff office is to send each appointee’s application for renewal of staff privileges to the chairperson of each hospital department. Thus, at least initially, the applications are not sent directly to the credentials committee. Once the department chairperson has provided the department chiefs reappointment status form and the department chair’s recommendations on clinical privileges, the credentials committee is required to begin its review and to consider all pertinent information. In this case, the documents in Section I provided a starting point for the entire process, but they were less central to the actual work of the peer review committee.

Hallmark does not claim that the documents in Section II or Section III of the Privilege Log are protected under G.L.c. Ill, §205(b). As discussed above, even if the documents were protected by G.L.c. Ill, §205(b), they still must be produced to the Board. In any event, the documents in Sections II and III are protected under G.L.c. Ill, §205(b) because these documents are “records which are necessary to comply with risk management and quality assurance programs established by the Board.” G.L.c. Ill, §205(b).

As explained above, none of the documents contained in the Privilege Log are protected under G.L.c. Ill, §204(c).

Hallmark has not established that the documents this court is requiring it to produce to the Board are solely protected under G.L.c. Ill, §204(a). See Board of Registration in Med. v. Hallmark Health Corp., 454 Mass. at 510 (determining that Hallmark has the burden of establishing that each document is privileged).