MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2018 ME 140
Docket:      Cum-18-15
Argued:      July 18, 2018
Decided:     October 16, 2018

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     JABAR and ALEXANDER, JJ.

PAMELA G. ARGEREOW

v.

VERNE M. WEISBERG, M.D., et al.

HJELM, J.

[¶1]  Pamela G. Argereow commenced this action against Dr. Verne M. Weisberg and Mercy Hospital, alleging that Weisberg communicated with someone at Mercy about Argereow's professional background and that, as a result, Mercy did not follow through with its decision to employ her. Argereow—a former employee at one of Weisberg's medical offices—alleges that Weisberg's statements to Mercy were retaliatory because, in an administrative proceeding, she had testified adversely to the interests of another of Weisberg's clinics.  The Superior Court (Cumberland County, *L. Walker, J.*) granted Weisberg's and Mercy's separate motions to dismiss the complaint for failure to state claims on which relief could be granted, *see* M.R.

Civ. P. 12(b)(6), because some counts were legally insufficient and other counts failed due to the absolute immunity provisions of the Maine Health Security Act, 24 M.R.S. §§ 2501-2988 (2017).  Argereow challenges these determinations on this appeal.  We correct one aspect of the judgment and affirm.

## I.  BACKGROUND

[¶2]  Because this appeal is based on a facial review of the complaint, we consider only the alleged facts, which we take as true, *see Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 2, 155 A.3d 426, and "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory."  *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 7-8, 843 A.2d 43 (quotation marks omitted).

[¶3]  Between February of 2012 and October of 2014, Argereow worked as a nurse practitioner at a medical practice that Weisberg owns and operates. Argereow began seeking other employment, including at Mercy, in the summer of 2014.  She disclosed in an online application for Mercy that she had consented to a professional reprimand in 2005 because in 2003 she falsely indicated on a checklist that during a medical procedure a surgical team had completed a step that it had not taken.

[¶4]  On September 23, 2014, Argereow testified under subpoena at a hearing concerning an unemployment claim brought by a former employee of another clinic owned and operated by Weisberg.  On October 1, the Unemployment Commission administrative hearing officer, citing Argereow's testimony, issued an order favorable to the former employee and allowed benefits, which were "chargeable" to Weisberg's clinic.

[¶5]  On the same day as the unemployment hearing, Mercy sent Argereow a written offer for her to work as a nurse practitioner at one of its clinics.  On October 6, Argereow underwent a pre-placement screening, resulting in her approval for employment at Mercy without restrictions, and received Mercy's employee handbook.  Her projected start date was November 10, 2014.

[¶6]  On October 15, Argereow informed Weisberg that she was leaving her job at his practice and that her last day there would be October 29.  Weisberg learned from Argereow on October 31 that she would be working for Mercy.  Sometime, "likely" during the ensuing week, Weisberg "or someone on his behalf" "made a phone call [to someone at Mercy] and cost [Argereow] her job at Mercy" because of her testimony at the unemployment claim hearing.  The information conveyed by Weisberg during the phone call concerned

4

Argereow's "professional background" and her "employment qualifications or performance," and suggested that she was "incompetent in her professional practice." Argereow's complaint contains no further allegations about what the caller allegedly said during the phone call, who made the call,[1] to whom the call was made, or when the call was made. Weisberg's statements had "the effect of discouraging Mercy from employing [Argereow]."

[¶7]   On November 7, a human resources employee at Mercy advised Argereow that her "projected start date was being pushed back on the basis that there were potential issues associated with her medical credentialing." Although Mercy had not concluded the hiring process, Argereow "had already been introduced to the . . . team as a new employee and understood that there were no remaining contingencies regarding her employment by Mercy and that all interviews had already taken place." At Mercy's request, however, Argereow met with its Chief of Surgery on November 7. After they discussed the reprimand on her nursing license, the physician expressed his appreciation for Argereow's candor concerning the incident and said he would "present this information to the Mercy Board the following week." During the meeting, the

---

[1] The complaint alleges variously that Weisberg made the call and that it could have been made by someone else.

physician noted to Argereow that "a Dr. Weisberg, which could refer to Dr. Tracey Weisberg, [Dr. Verne M.] Weisberg's spouse, was a member of Mercy's Board or held a significant administration role."

[¶8] On November 10, 2014, a Mercy representative called Argereow to suggest that she withdraw her credentialing application. Argereow then called the human resources department and was told to expect a call from another Mercy physician. That physician called Argereow the next day to warn her that if she "pursued her application, it would be denied on the basis that she did not qualify for credentialing and that this would constitute an event which would have to be reported to the Maine State Board of Nursing and which would impair her ability to find work elsewhere." Shortly thereafter, Argereow requested a copy of her employment application with Mercy and confirmed that she had "truthfully responded to all questions asked in conjunction with her initial online application." Nevertheless, Argereow withdrew her application for employment and credentialing with Mercy on November 13. On December 1, 2014, Argereow reviewed her Mercy credentialing file, "which did not contain any adverse information except a notation, without explanation, from [the Chief of Surgery] recommending against credentialing." As a result of Weisberg's and Mercy's conduct, she underwent marriage counseling

6

because of stress and lost eight months of wages, which was a significant financial hardship.

[¶9] In November of 2015, Argereow commenced this action, naming Weisberg as the sole defendant. In her complaint as amended, Argereow asserted claims for tortious interference with a prospective economic advantage, intentional infliction of emotional distress, defamation, negligent infliction of emotional distress, slander per se, and violation of the Whistleblower Protection Act (WPA), *see* 26 M.R.S. § 833(1)(C) (2017). Weisberg moved for the court to dismiss each count for failure to state a claim. The court granted the motion in part, dismissing without prejudice the claims for defamation, slander per se, and negligent infliction of emotional distress, but allowing Argereow to proceed on the other claims.[2]

[¶10] During pretrial proceedings, Argereow served Mercy with a subpoena to obtain certain credentialing-related documents. After resulting motion practice involving Argereow and Mercy, the court issued an order protecting Mercy from producing some of that material. Argereow then filed a

---

[2] The dismissal of a claim for failure to state a basis for relief is an adjudication on the merits. *See U.S. Bank Trust, N.A. v. Mackenzie*, 2016 ME 149, ¶ 11, 149 A.3d 267; *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 9, 708 A.2d 283. Therefore, the dismissal of Argereow's claims for defamation, slander per se, and negligent infliction of emotional distress should have been with prejudice, and we correct that aspect of the order of dismissal accordingly.

second amended complaint, which included all of the counts she had asserted against Weisberg, including the ones the court had dismissed, and added Mercy as a defendant and asserted claims against Mercy for intentional infliction of emotional distress and whistleblower retaliation, and a count seeking access to credentialing records in Mercy's possession.

[¶11] Weisberg and Mercy filed separate motions to dismiss Argereow's second amended complaint. The court granted Dr. Weisberg's motion to dismiss the remaining counts against him based on its determination that he is entitled to immunity pursuant to 24 M.R.S. § 2511. The court granted Mercy's motion to dismiss, which was based on assertions that Mercy was statutorily immune, also pursuant to section 2511, and that Argereow's claims did not state a basis for relief. The court "determined that Mercy is not unquestionably entitled to immunity" but granted the motion because the claims against Mercy did not state claims for relief. Argereow filed a notice of appeal,[3] and Mercy filed a cross-appeal to preserve the argument that its motion to dismiss should

---

[3] On appeal, Argereow does not pursue any claim that the court erred by dismissing her claims against Weisberg for negligent infliction of emotional distress or slander per se, or the dismissal of her claim against Mercy seeking access to "professional competence review records."

8

have been granted based on section 2511 immunity.[4]  *See* M.R. App. P. 2B(c),

2C(a).

## II.  DISCUSSION

[¶12]  When we review an order dismissing a complaint, we consider

only the facts alleged in the complaint and "examine the complaint in the light

most favorable to the plaintiff to determine whether it sets forth elements of a

cause of action or alleges facts that would entitle the plaintiff to relief pursuant

to some legal theory."  *Moody*, 2004 ME 20, ¶¶ 7-8, 843 A.2d 43 (quotation

marks omitted).  This is a process that "tests the legal sufficiency of the

allegations in a complaint, not the sufficiency of the evidence the plaintiffs are

able to present."  *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (citation

omitted).  Dismissal of a complaint "should only occur when it appears beyond

---

[4] We acknowledge Mercy's desire to be cautious, particularly in light of some of our suggestions describing when a cross-appeal is required.  *See, e.g., MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 28 n.17, 82 A.3d 104; *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 6 n.4, 66 A.3d 585.  Nonetheless, Mercy's cross-appeal was unnecessary because—as we now clarify—an appellee is not required to cross-appeal "if it argues in favor of affirming the decision in every respect but simply contends that the same result should have been reached through different legal reasoning."  *Harris v. Woodlands Club*, 2012 ME 117, ¶ 16 n.8, 55 A.3d 449; *accord Scott Dugas Trucking & Excavating, Inc. v. Homeplace Bldg. & Remodeling, Inc.*, 651 A.2d 327, 329 (Me. 1994); *State v. Me. Cent. R.R.*, 517 A.2d 55, 57 (Me. 1986); *Givertz v. Me. Med. Ctr.*, 459 A.2d 548, 556 (Me. 1983) ("An appellee need not cross-appeal to raise an issue that merely could provide an alternative ground to uphold his judgment."); Alexander, *Maine Appellate Practice*, § 2C.1(a) at 72 (5th ed. 2018) ("[A]n appellee need not cross-appeal and may argue by brief any issue that could provide an alternative basis to affirm the judgment.").  In any event, we affirm the court's order on grounds other than Mercy's assertion of immunity and therefore do not reach that issue.

doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 5, 708 A.2d 283 (quotation marks omitted).

[¶13]  We first address Weisberg's immunity from Argereow's claims against him, and we then address the sufficiency of the allegations in Argereow's two remaining counts against Mercy.

A.    Physician Immunity

[¶14]  The claims that Argereow continues to pursue against Weisberg are for tortious interference with an economic advantage, intentional infliction of emotional distress, and violation of the Whistleblower Protection Act.[5]

[¶15]  Immunity is an affirmative defense because it is a legal doctrine of avoidance of liability.  *See* M.R. Civ. P. 8(c).  A defendant may raise immunity as

---

[5] Argereow's principal brief on appeal did not contain any assertion that the court erred by dismissing her defamation claim against Weisberg, which was on a ground other than immunity.  She raised that contention only in her reply brief, and at oral argument acknowledged that she was attempting to "resurrect" such an argument.  That effort is insufficient to preserve for appellate review any challenge to the dismissal of that count of the complaint. *See Lincoln v. Burbank*, 2016 ME 138, ¶ 41, 147 A.3d 1165 ("An issue raised for the first time [on appeal] in a reply brief may be viewed as not preserved for appeal.").

We note, however, that even if Argereow had preserved that issue, her argument would have been unavailing for two reasons.  First, pursuant to section 2511, Weisberg is entitled to immunity from civil liability on the defamation claims, just as he is from Argereow's other claims against him, *see infra* ¶ 23. Second, that count fails as a matter of law because, as the court correctly ruled in granting Weisberg's first motion to dismiss, she did not allege with specificity any defamatory statement. *See Picard v. Brennan*, 307 A.2d 833, 834-35 (Me. 1973) (explaining that because a defendant can claim truth as a defense against a claim for defamation, the "defendant is . . . entitled to know precisely what statement is attributed to him" both in the pleadings and in the evidence presented at trial).

the ground for dismissal of a claim for failure to state a basis for relief.[6] *Lalonde*, 2017 ME 22, ¶ 11, 155 A.3d 426. When a party seeks dismissal of a claim based on an affirmative defense, the relevant inquiry is whether the "facts giving rise to the defense appear on the face of the complaint." *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 504 (Me. 1996); *see* M.R. Civ. P. 12.

[¶16] Section 2511 of the Maine Health Security Act (MHSA) grants immunity from civil liability as follows:

> Any person acting without malice, any physician, podiatrist, health care provider, health care entity or professional society, any member of a professional competence committee or professional review committee, any board or appropriate authority and any entity required to report under this chapter are immune from civil liability:
>
> **1. Reporting**. For making any report or other information available to any board, appropriate authority, professional competence committee or professional review committee pursuant to law;
>
> **2. Assisting in preparation**. For assisting in the origination, investigation or preparation of the report or information described in subsection 1; or

---

[6] We are not persuaded by Argereow's assertion that Weisberg waived the immunity defense by not having included it in his responses to earlier iterations of her complaint. When Argereow filed the operative pleading, namely, the second amended complaint, Weisberg moved for the court to dismiss it based on an assertion of immunity. He therefore did not waive that defense any more than Argereow waived any claims that were not included in the previous complaints. *See ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case." (citations and quotation marks omitted)).

**3. Assisting in duties**.  For assisting the board, authority or committee in carrying out any of its duties or functions provided by law.

[¶17]   The complaint establishes that Weisberg is a physician,[7] and Argereow does not argue otherwise.   Therefore, section 2511 immunizes Weisberg from civil liability for any conduct falling within the purview of that statute.

[¶18]  Argereow alleges that "likely" sometime between October 31 and November 7, Weisberg—or someone on his behalf—called someone at Mercy and made statements about her "professional background," including her "employment qualifications or performance," and suggested that she was professionally incompetent.  That report had the effect of discouraging Mercy from finalizing an employment relationship with Argereow, and Mercy proceeded to persuade her to withdraw her employment application.

[¶19] The MHSA requires every licensed hospital to establish at least one professional competence committee "with responsibility effectively to review the professional services rendered in the facility for the purpose of insuring quality of medical care of patients therein."   24 M.R.S. § 2503(3)(A).

---

[7] The MHSA defines a "physician" as "any natural person authorized by law to practice medicine, osteopathic medicine or veterinary medicine within this State."  24 M.R.S. § 2502(3) (2017).

12

Professional competence committees engage in professional competence review activities, *id.* § 2502(4), which are defined in section 2502(4-B) as the

> study, evaluation, investigation, recommendation or action, by or on behalf of a health care entity and carried out by a professional competence committee, necessary to:
>
>> **A.** Maintain or improve the quality of care rendered in, through or by the health care entity or by physicians;
>> **B.** Reduce morbidity and mortality; or
>> **C.** Establish and enforce appropriate standards of professional qualification, competence, conduct or performance.

[¶20] Here, Argereow's allegations place Weisberg's report to Mercy squarely within the scope of immunity established in section 2511. The information Weisberg conveyed pertained to Argereow's professional background, employment qualifications or performance, and professional competence, and Argereow alleges that it was this information that caused Mercy to effectively rescind the job offer that had been extended to—and accepted by—Argereow. Weisberg's conduct in providing information about her professional background and competence to Mercy is therefore immunized by section 2511.

[¶21] Argereow makes two arguments in an attempt to remove Weisberg's conduct from the protections of section 2511. First, she emphasizes her allegation that Weisberg acted with a retaliatory motive—that is, in bad

faith—when he made the report about her professional competence and background to Mercy. We have held, however, that the presence of animus is irrelevant to the availability of physician immunity created by section 2511. *See Strong v. Brakeley*, 2016 ME 60, ¶ 12, 137 A.3d 1007. In that case, we examined the Legislature's designation in section 2511 of the persons and entities that are entitled to the immunity created by that statute. *Id*. ¶¶ 6, 9, 11. Based on the plain language of the statute, we concluded that the immunity provided by section 2511 to a physician is not conditioned on the absence of malice.[8] *Id.* ¶ 12. Rather, malicious intent precludes immunity only for persons who are not included within any of the groups of other qualified reporters enumerated in the statute after the phrase "[a]ny person acting without malice." *Id.*; 24 M.R.S. § 2511. Because "physicians" constitute one of those enumerated groups, immunity is not forfeited even when the otherwise protected conduct is accompanied by malice. Therefore, the immunity that section 2511 provides to Weisberg is not defeated or otherwise restricted by Argereow's allegation that he made the report about her professional competence and qualifications with a retaliatory motive.

---

[8] To the extent that Argereow's complaint can be read to assert that Weisberg's privilege pursuant to section 2511 is "conditional," *Strong v. Brakeley* establishes that the assertion is wrong as a matter of law. 2016 ME 60, ¶¶ 4-14, 137 A.3d 1007.

14

[¶22]  As a second argument to take her claims outside section 2511, Argereow contends that because Mercy had completed its process of approving her credentials before Weisberg called the hospital in early November, Weisberg's report was no longer protected.  The protections created by section 2511 are not limited in that manner, however.  Nothing in the statute restricts its application to a particular phase of the credentialing assessment.

[¶23]  Further, as noted above, *see supra* ¶ 19, the professional competence committee that a hospital is required to create and maintain pursuant to section 2503(3)(A) is charged with studying, evaluating, investigating, recommending, and acting on the hospital's legal responsibility to "*[m]aintain or improve* the quality of care rendered in, through or by the health care entity . . . ." *Id.* § 2502(4-B)(A) (emphasis added).  This makes clear that credentialing and assessing of the professional competence of a hospital's health care practitioners, which includes nurse practitioners such as Argereow, *see id.* § 2502(1-A), is an ongoing, open-ended endeavor.  Even after the credentials of a prospective employee have been approved, the health care entity has a continuing legal duty to monitor and, when appropriate, to reassess that person's professional credentials.

[¶24]  As we pointed out in *Strong,* section 2511 is intended to encourage reports and participation in the communication and assessment of medical competence.  2016 ME 60, ¶ 14, 137 A.3d 1007.  The immunity is therefore coextensive with a hospital's continuing responsibility—even as to health care professionals who are already in the hospital's employ—to monitor and act in furtherance of quality of care.  Therefore, Argereow's allegation that "there were no remaining contingencies regarding her employment" at Mercy does not bear on Weisberg's statutory immunity.

[¶25]  In summary, because Argereow alleges that Weisberg provided Mercy with a report about her professional background and competence and that Mercy determined it would not ultimately approve her credentialing application, Weisberg is entitled to immunity pursuant to section 2511.  The court therefore correctly dismissed all claims against Weisberg because he is immune from civil liability.[9]

---

[9]  Even if Weisberg were not statutorily immune from liability on Argereow's claim, as we discuss below, Argereow's allegations of the emotional distress resulting from Weisberg's conduct are not sufficient as a matter of law to state a claim for intentional infliction of emotional distress, *see infra* ¶ 27.  Although the court rejected that analysis, its ultimate conclusion—that Argereow could not proceed on this count against Weisberg—was correct.  *See Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 17, 103 A.3d 547 (affirming the judgment "for reasons different from those stated by the trial court").  Further, for the reasons we have discussed, *see supra* n.5, Argereow's claim for defamation fails for reasons separate from Weisberg's immunity.

16

B.    Claims Against Mercy Hospital

[¶26]  We next turn to Argereow's two claims against Mercy that she still seeks to pursue: intentional infliction of emotional distress and violation of the WPA.

1.    Intentional Infliction of Emotional Distress

[¶27]  The four elements of a claim for intentional infliction of emotional distress are that "(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."  *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18 (quotation marks omitted) (alteration omitted).  The determination of whether the facts alleged are sufficient to establish that the defendant's conduct is "so extreme and outrageous to permit recovery" is a question of law for the court to decide.  *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (quotation marks omitted).

[¶28]  Here, Argereow alleges that Mercy acted on Weisberg's report concerning her professional qualifications and performance, where he suggested that she was professionally incompetent, by encouraging her to withdraw her employment application.  As a matter of law, this falls short of the standard for actionable conduct necessary for a claim for intentional infliction of emotional distress.  *See Bratton v. McDonough*, 2014 ME 64, ¶ 23, 91 A.3d 1050 (vacating judgment on an IIED claim, where the trial court had determined that the evidence did not show extreme and outrageous conduct by a landlord who "allowed a family with young children to live in a house that exposed the children to toxic levels of lead for several years" and did not relocate the family, despite being under a legal duty to do so, for four years after the State declared the house to be a lead hazard); *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 700 (Me. 1986) (concluding that a complaint alleged "conduct upon which liability for intentional infliction of emotional distress may be predicated" where, in the context of a contractual relationship, the defendant repeatedly misrepresented that a monument had been shipped and would be delivered on time for a religiously significant event).

[¶29]  Further, Argereow's allegations do not place her emotional distress, which takes the form of lost wages and a strained marriage that led to

counseling, at a level where it could be characterized as "so severe that no reasonable person could be expected to endure it." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18 (quotation marks omitted) (alteration omitted). Rather, her allegation is akin to the "general feelings of upset and defeat" that are insufficient to establish a claim for intentional infliction of emotional distress. *See Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶¶ 4-8, 26, 48 A.3d 774; *see also Lyman v. Huber,* 2010 ME 139, ¶¶ 19, 24-26, 10 A.3d 707 (stating that the "serious" emotional distress resulting from fifteen years of emotional abuse inflicted by a domestic partner is not sufficient for a claim for intentional infliction of emotional distress).

[¶30] Because Argereow's allegations fell short of meeting the pleading requirements for two elements of the claim for intentional infliction of emotional distress, the court correctly dismissed that count.[10]

---

[10] Argereow also argues that Mercy's conduct in "aid[ing] and abett[ing] Weisberg's retaliation against Argereow" is sufficient for a claim against Mercy for intentional infliction of emotional distress. As the theory of joint tortfeasor liability applies here, however, the claim is predicated on "harm resulting to a third person from the tortious conduct of another" if one "does a tortious act in concert with the other or pursuant to a common design with him." Restatement (Second) of Torts § 876 (Am. Law. Inst. 1979). As explained above, *see supra* ¶¶ 6-8, Argereow has not alleged in her complaint any conduct by Mercy that was in concert with Weisberg.

## 2. Whistleblower Retaliation

[¶31]  Argereow's second amended complaint included a claim against Weisberg and Mercy for violation of the Whistleblower Protection Act and the Maine Human Rights Act, 5 M.R.S. §§ 4553(10)(D), 4572(1)(A) (2017).[11]  Mercy moved to dismiss all of Argereow's claims against it, including the WPA claim, asserting that it is immune from liability pursuant to section 2511 and, alternatively, that its alleged conduct did not violate the WPA.  In her opposition to Mercy's motion to dismiss the WPA claim, Argereow addressed only the issue of Mercy's immunity.

[¶32]  In its order granting Mercy's motion to dismiss, the court stated that it was unable to determine definitively that Mercy was entitled to immunity but agreed with Mercy's alternative argument—the one that Argereow did not address in her opposition to Mercy's motion—and concluded that Argereow's WPA claim against Mercy failed to state a basis for relief.  Although Argereow contends here that the court erred by dismissing her WPA claim, she did not preserve a challenge to the ground on which the court dismissed that claim, and it is therefore waived.  *See Homeward Residential, Inc.*

---

[11]  Argereow has made clear that she is not asserting that Mercy is liable for a violation of the WPA on any theory other than "aid[ing] and abet[ing]" Weisberg's own alleged violation of the WPA.

*v. Gregor*, 2017 ME 128, ¶ 9, 165 A.3d 357 (stating that an issue is waived for appeal if it was not timely presented in the trial court); Alexander, *Maine Appellate Practice* § 402(a) at 311 (5th ed. 2018) ("The Law Court will not reach an issue . . . if the issue is raised for the first time on appeal.").

The entry is:

> Judgment dismissing the claims against Verne M. Weisberg, M.D. for defamation, slander per se, and negligent infliction of emotional distress corrected as dismissals with prejudice. As corrected, judgment affirmed.

---

JABAR, J., with whom ALEXANDER, J., joins, dissenting.

[¶33]  We respectfully dissent because, at this motion-to-dismiss stage of the proceedings, with all favorable inferences given to Argereow, the pleadings do not affirmatively establish that Weisberg is entitled to the immunity provided by section 2511.  Immunity under section 2511 is an affirmative defense that physicians are "eligible" for, therefore, Weisberg has the burden of proving that his actions are within the statute in order to be afforded immunity. *See Strong v. Brakeley*, 2016 ME 60, ¶¶ 6-9, 137 A.3d 1007; *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426.  Consistent with the method by which other affirmative defenses are reviewed at the motion-to-dismiss stage of

proceedings, it must be clear on the face of the complaint that the cause of action is barred by the immunity statute. *See Jackson v. Borkowski*, 627 A.2d 1010, 1013 (Me. 1993) (statute of limitations); *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995) (governmental immunity under the Maine Tort Claims Act); *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 504 (Me. 1996) (immunity under the Workers' Compensation Act).

[¶34]  When a complaint is dismissed on a M.R. Civ. P. 12(b)(6) motion, we review it de novo, in the light most favorable to the plaintiff, and give no deference to the trial court. *See Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 6, 942 A.2d 700.  At this stage of the proceedings, it is premature to conclude that Weisberg's claim of immunity has been clearly established within the four corners of Argereow's complaint.  In *Strong*, we determined that two physicians were entitled to immunity under section 2511, but this was done on a motion for summary judgment after the trial court denied the physician's motion to dismiss based on a claim of immunity pursuant to section 2511 and ordered the parties to proceed to discovery on the limited issue of immunity. *See Strong*, 2016 ME 60, ¶¶ 3, 14, 137 A.3d 1007.  Because we believe that the Superior Court should do the same here, we respectfully dissent.

22

A.      Immunity under Section 2511 of the Maine Health Security Act

[¶35]  The Court holds that Weisberg is entitled to immunity pursuant to section 2511 because the pleadings establish that Weisberg "provided Mercy with a report about her professional background and competence."  Court's Opinion ¶ 25.  The Court refers to the information supplied by Weisberg as information normally associated with credentialing, and states that "immunity is . . . coextensive with a hospital's continuing responsibility . . . to monitor and act in furtherance of quality care."  Court's Opinion ¶ 24.  By bootstrapping the content of the information to the hospital's continuing duty to monitor the quality of care, the Court characterizes Weisberg's actions as falling within the peer review privilege.  However, the Court fails to consider the context in which the information was supplied to the hospital representative by Weisberg.  Courts should not merely consider the content of information when deciding whether a physician is entitled to immunity under section 2511.  Such a narrow focus overlooks the way in which the information was produced, the purpose for which the information was produced, and to whom the information was directed.  *See Bd. of Registration in Med. v. Hallmark Health Corp.*, 910 N.E.2d 898, 907 (Mass. 2009) (holding that courts must look to the "way in which a document was created and the purpose for which it was used, not . . . its

content.").  The Court's decision expands the scope of immunity to include any information supplied to any representative of a hospital by a physician.  This is not the intended scope of the immunity provided by section 2511.  Rather, the immunity is intended to apply to information supplied by a qualifying reporter to an appropriate authority during a legitimate peer review process.

[¶36]   The legislative history of section 2511 reveals that context is critical in evaluating whether a physician's comments are entitled to immunity. In 1975 the Legislature responded to escalating medical malpractice insurance rates in Maine by creating the Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance, more commonly referred to as the Pomeroy Commission.  L.D. 727, Statement of Fact (108th Legis. 1977).  As a result of the Commission's findings and recommendations, the Maine Health Security Act (MHSA) was enacted.  P.L. 1977, ch. 492 (effective Oct. 24, 1977). Discussing the then-proposed legislation, the Pomeroy Commission's findings and recommendations briefly touched on section 2511:

> The doctors of Maine are justly proud of their self[-]discipline in terms of organized quality control.  Their efforts will be strengthened, and the public reassured by the enactment of sections 2503 through 2507 which make a minimal level of peer review a legal duty for hospital medical staffs and for medical societies.  These sections also substantially broaden the existing law on reporting incompetence or negligence *to the appropriate licensing authority*.

24

Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance, Report to the 108th Legislature, at xx (Jan. 25, 1977) (emphasis added).

[¶37] In 1985 the Legislature amended section 2511 in "An Act to Clarify the Law Regarding Peer Review Immunity Under the Maine Health Security Act." P.L. 1985, ch. 193, § 2511. The purpose of the amendment was "to clarify existing law and fulfill the original legislative intent that all those *participating in good faith in legitimate peer review activities are entitled to immunity*." L.D. 1107, Statement of Fact (112th Legis. 1985) (emphasis added). Although malice is irrelevant for purposes of affording immunity to a physician under section 2511, *see Strong*, 2016 ME 60, ¶ 12, 137 A.3d 1007, the context in which a physician makes statements and then later seeks shelter under section 2511 is not. As this legislative history demonstrates, a physician must be participating in a *legitimate* peer review activity with an *appropriate* authority.[12] Case law from other states concerning the peer review privilege support that notion as well.

---

[12] When the MHSA was first enacted, the only authority that could receive protected reports was the Board of Registration in Medicine or the Board of Osteopathic Examination and Registration. P.L. 1977, ch. 492, §§ 2502, 2511 (effective Oct. 24, 1977). In 1985 the Legislature amended the statute to protect reports to certain committees that were organized for the purpose of identifying and treating physicians impaired by misuse of alcohol or drugs, or by physical or mental infirmity. P.L.

[¶38] Almost all of the fifty states have some form of medical peer review privilege. Some courts have differentiated between conversations and documents arising in the course of ordinary business operations as opposed to conversations associated with peer review proceedings. The United States District Court for the District of Vermont explained the importance of context in determining whether the privilege applies: "Because the dividing line between peer review and normal business operations can be unclear, courts generally apply the peer review privilege only when the formalities of a peer review process are clearly apparent." *Robinson v. Springfield Hosp.*, No. 1:09-CV-75, 2010 U.S. Dist. LEXIS 10160, at *5 (D. Vt. Feb. 5, 2010) (requiring disclosure in a discovery dispute, the Vermont court declined to find that two meetings involving a physician's assistant were part of a "formal peer review process," and instead characterized the meetings as "in the course of ordinary business operations."); *see also Prouty v. Sw. Vt. Med. Ctr.*, No. 89-2-13, 2013 Vt. Super. LEXIS 64, at *5-7 (Vt. Super. Ct. Oct. 26, 2013) (considering the discoverability of documents, the court ruled that defendant's "blanket assertion of [peer review] privilege" did not state a valid claim for the privilege

---

1985, ch. 185, §§ 2502(4-A), 2511 (effective May 20, 1985). Eventually, the Legislature added the language we now have to protect reporting to any board, authority, or committee. *See* 24 M.R.S. § 2511.

because "the party invoking a privilege must show the privilege applies. Defendant cannot exclude all information considered by a peer review committee. Instead, Defendant *may only refuse to disclose material that Defendant shows was created as a part of a formal peer review process*." (emphasis added) (citations omitted)).

[¶39] The Massachusetts Supreme Judicial Court dealt with a similar problem involving a document prepared by an established peer committee that was claimed to be privileged in a privilege log, and therefore not subject to discovery requests. *See Bd. of Registration in Med. v. Hallmark Health Corp.*, 910 N.E.2d 898, 907 (Mass. 2009) (remanding "for an individualized consideration whether each of the documents listed on [the] privilege log is protected by [the peer review statute]. . . ."). The Massachusetts Supreme Judicial Court held that merely labeling records as privileged is insufficient. *Id*. at 906-07. Instead, the court must look to the "way in which a document was created and the purpose for which it was used, not . . . its content." *Id.* at 907 (quotation marks omitted). In all of these cases it is apparent that the context in which statements are made, or a document produced, makes a difference in evaluating an assertion of immunity.

[¶40]  As we have noted before in the context of immunity under the Maine Tort Claims Act, "[t]he review of a claimed exception to governmental immunity often requires, as it does here, a close examination of the individual facts of the case."  *Bussell v. City of Portland*, 1999 ME 103, ¶ 2, 731 A.2d 862. For that reason, we suggested in *Bussell* that "parties should be sparing in their use of Rule 12(b)(6) to test the sufficiency of a complaint when resolution of the motion requires analysis of a claimed exception to governmental immunity."  *Id.* at 862-63.  The same is true of immunity under section 2511, given the need to identify the context of the statements to ensure that they fall within the purview of section 2511.  *See generally Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988) (vacating the Superior Court's dismissal of a complaint on a 12(b)(6) motion, finding plaintiff's complaint legally sufficient and defendant's affirmative defense needing further factual development); *Danforth*, 667 A.2d 847, 847-48 (Me. 1995) (vacating the Superior Court's dismissal of a complaint on a 12(b)(6) motion claiming governmental immunity); *Shaw*, 683 A.2d 502, 504 (Me. 1996) (vacating a trial court's "premature" dismissal of a complaint on a 12(b)(6) motion claiming immunity under Workers' Compensation Act).

[¶41] In this case, we are addressing the pleadings without any context of Weisberg's allegedly defamatory statements, context typically obtained through discovery. Simply because Weisberg is a physician commenting on another's qualifications does not necessarily bring the immunity statute into play. The Court's overbroad interpretation of section 2511 is being applied prematurely, without any consideration of the context in which the alleged defamatory statements about Argereow were made by Weisberg to representatives of Mercy Hospital. As we stated in *Strong*, "[i]n subsections 1 and 2, immunity is dependent upon the identity of the recipient of a report and the purpose of the report. For subsection 3, immunity is dependent upon the provision of assistance to a board, authority, or committee." *Strong*, 2016 ME 60, ¶ 7, 137 A.3d 1007. Unlike in *Strong*, we do not know to whom Weisberg placed his call or report, and after examining the four corners of the pleadings we do not know whether that person could be properly deemed an appropriate "board, authority, or committee" pursuant to section 2511. Weisberg's affirmative defense of immunity should be determined only after the facts have been developed through discovery.

B.      Causes of Action

[¶42]  Since we do not believe that Weisberg is entitled to immunity at this stage of the proceedings, we must address the merits of Argereow's allegations contained in her complaint.  We find that the complaint makes legitimate claims of defamation, slander per se, and tortious interference with a prospective economic advantage.[13]

1.      Defamation

[¶43]  Defamation consists of four elements: (1) "a false and defamatory statement concerning another"; (2) "an unprivileged publication to a third party"; (3) "fault amounting to at least . . . negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447.  "Slander per se refers to spoken defamatory statements that relate to a profession, occupation or official station in which the plaintiff was employed.  Malice is implied as a matter of law in such cases, and the claimant may recover compensatory damages without proving

---

[13]  We agree with the majority regarding Argereow's claims against Mercy Hospital and Weisberg for intentional infliction of emotion distress and whistleblower liability, and do not discuss those claims further.

special damages." *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 27, 974 A.2d 276 (quotation marks omitted).

[¶44] "A motion to dismiss a complaint for failure to state a claim should not be granted if the pleading alleges facts which would entitle the plaintiff to relief upon some theory, or if it avers every essential element of a claim." *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). In the context of a defamation action, we have acknowledged as "suspect" the application of a strict standard of specificity at the motion-to-dismiss stage of proceedings. *See Marston v. Newavom*, 629 A.2d 587, 591 (Me. 1993) (noting that the continuing validity of the requirement that plaintiffs prove the defamatory words strictly as alleged "is suspect *in light of modern notice pleading and increased reliance on discovery*" (emphasis added)). Moreover, the requirement that defamatory words be proven at trial strictly as alleged has been relaxed to afford plaintiffs more latitude. *See Saunders*, 497 A.2d 1121, 1125-26 (Me. 1985) ("[M]aterial words, those essential to the charges made, must be proved as alleged, but . . . some latitude may be allowed with respect to unimportant, connecting or descriptive words.").

[¶45] In *Vahlsing*, we vacated a trial court's granting of a motion to dismiss and held that the "failure to specifically allege the date, month, and year

of the publication of the alleged defamatory material is not necessarily fatal." *Vahlsing*, 487 A.2d 264, 267 (Me. 1985). We reasoned that "[i]n modern pleading practice, the purpose of the complaint is to provide the defendant with fair notice of the claim against him." *Id.*

[¶46] Turning to the case before us, Argereow has pleaded sufficient facts that would entitle her to relief in an action for defamation and slander per se against Weisberg. Furthermore, the pleadings allege sufficient facts to provide Weisberg with fair notice of the defamation claim against him. Specifically, Argereow's complaint alleges that, between October 31, 2014, and November 7, 2014, Weisberg contacted representatives of Mercy Hospital and made false and intimidating statements with the intention of discouraging Mercy from employing her. Further, Argereow alleges that Weisberg informed one of his employees that when he found out Argereow was going to be employed at Mercy he made a phone call and cost Argereow her job at Mercy.

[¶47] There are certainly situations in which the granting of a motion to dismiss a defamation claim is warranted, notwithstanding the highly deferential standard of review afforded to plaintiffs on such a motion. *See Halco v. Davey*, 2007 ME 48, ¶¶ 4, 14, 919 A.2d 626 (affirming the dismissal of a defamation claim under M.R. Civ. P. 12(b)(6), where the alleged defamatory

statements were merely statements of opinion).  However, it would take far more unsupported speculation and vagueness than is present in the pleadings of this case to appropriately dismiss a defamation complaint for a lack of specificity in the alleged defamatory statements.  To this point, the Court relies upon the *Picard* case, in which we vacated a judgement following a bench trial. Court's Opinion n. 5; *see Picard v. Brennan*, 307 A.2d 833, 833-35 (Me. 1973). The Court's reliance on this case is misplaced.  *Picard* was an appeal following a *bench trial*, and does not take into account the procedural posture of the case before us and the standard by which motions to dismiss are decided.  *See id*; *Marston*, 629 A.2d 587, 591 (Me. 1993).  We find that Argereow's complaint alleges a sufficient statement to give fair notice of the claims to the defendants in this case.  *See Casco Bank & Trust Co. v. Rush*, 348 A.2d 239, 241 (Me. 1975) (disclosure of "all material details . . . is not the function of the complaint but is a burden which the . . . motion for more definite statement, or the various discovery devices provided by the Rules, can better carry.") (quotation marks omitted).

2. Tortious Interference with a Prospective Economic Advantage

[¶48]  To establish a claim of tortious interference with a prospective economic advantage, the complaining party must prove "(1) that a valid

contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Currie v. Indus. Sec. Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400. Intimidation that "procures [a] breach of a contract that would have continued but for such wrongful interference . . . is not restricted to frightening a person for coercive purposes." *Pombriant v. Blue Cross/Blue Shield of Me.*, 562 A.2d 656, 659 (Me. 1989) (quotation marks omitted).

[¶49] As the Superior Court correctly held, Argereow's claim sufficiently alleges that Weisberg intimidated Mercy Hospital into rescinding its job offer to Argereow. Accordingly, we would affirm the decision of the Superior Court denying the Defendant's motion to dismiss Argereow's claim for tortious interference with a prospective economic advantage.

C.    Conclusion

[¶50] In sum, we would hold that, at this stage of the proceedings, with all favorable inferences given to Argereow, the pleadings do not establish that Weisberg is entitled to immunity pursuant to section 2511. Furthermore, we would hold that Argereow's claims for defamation, slander per se, and tortious interference with a prospective economic advantage all allege sufficient facts to

withstand Defendant's motion to dismiss. We would vacate the Superior Court's decision and remand with instructions to proceed with discovery on the immunity issue.

---

Robert W. Kline, Esq. (orally), Kline Law Offices LLC, Portland, for appellant Pamela G. Argereow

Joanne I. Simonelli, Esq. (orally), and Frederick B. Finberg, Esq., The Bennett Law Firm, P.A., Portland, for appellee Verne M. Weisberg, M.D.

Thad B. Zmistowski, Esq. (orally), and Ryan P. Dumais, Esq., Eaton Peabody, Bangor, for appellee Mercy Hospital

Cumberland County Superior Court docket number CV-2015-504
FOR CLERK REFERENCE ONLY