STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-22-84

ALYSSA ANGELL,

        Plaintiff

    v.

REMEDY COMPASSION CENTER,
INC. d/b/a CURALEAF AUBURN,

CURALEAF, INC.,

and

SCOTT K. REED,

        Defendants

ORDER ON MOTION TO DISMISS

The matter before the court is defendants Remedy Compassion Center, Inc. d/b/a

Curaleaf Auburn, Curaleaf, Inc. and Scott K. Reed's joint motion to dismiss Counts IV, V, VI,

and VII of plaintiff Alyssa Angell's Complaint. For the following reasons, the motion will be

denied.

Background

The following facts are taken from allegations in the Complaint, which for the purposes

of a motion under M.R. Civ. P. 12(b)(6) must be treated as true.[1]

Ms. Angell is a former employee of Curaleaf Auburn and Curaleaf, Inc. (collectively,

"Curaleaf"). Ms. Angell was hired by Curaleaf in February 2015. (Compl. ¶ 5.) Mr. Reed

---

[1] The court notes that many of the averments in the complaint are lengthy narratives, sometimes consisting of roughly a page of text. (*See, e.g.* Compl. ¶ 24.) This makes accurate and precise citation difficult. M.R. Civ. P. 12(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct." In the future, counsel should work to break such narratives into more concise averments.

became President of Curaleaf Auburn in October 2016. (Compl. ¶ 7.) In February 2017, Ms. Angell went out on maternity leave. (Compl. ¶ 8.)

Ms. Angell returned from maternity leave in June 2017. (Compl. ¶ 9.) When Ms. Angell returned, she was promoted to the position of "compliance lead" and given a small raise. (*Id.*) Ms. Angell alleges that as a "compliance lead" she had the same responsibilities as a manager but was informed that Mr. Reed did not want her to become a manager. (*Id.*)

Mr. Reed allegedly "snapped" at Ms. Angell frequently and would make comments about her pumping breast milk while at work. (Compl. ¶¶ 11, 13.) Additionally, despite there being an available open office, Mr. Reed allegedly required Ms. Angell to share an office with Danielle Miller, who was the HR Manager for Curaleaf Auburn. (*Id.*; *see* Pl.'s Ex. A.) At one point, Ms. Angell alleges that she was permitted to pump in another office, but noticed that there was a security camera. (Compl. ¶ 12.)

In July 2018, Ms. Angell stopped nursing. (Compl. ¶ 16.) Afterwards, Ms. Angell was formally promoted to inventory manager and then assistant dispensary manager. (*Id.*) Ms. Angell alleges that the move to assistant manager did not come with an increase in compensation, but did require her to take on substantially more responsibility. (*Id.*) Ms. Angell alleges that Mr. Reed told her that she would soon be made manager of the Auburn store and given a salary. (*Id.*) While she was in this role, Ms. Angell alleges that Mr. Reed told her to only address workplace issues with him, not Ms. Miller, who was head of HR, or corporate. (Compl. ¶ 17.)

Ms. Angell alleges that Mr. Reed engaged in a variety of inappropriate conduct during her time as assistant manager. Mr. Reed allegedly stated that women were too emotional, and that when they were frustrated it "must be that time of the month." (Compl. ¶ 18.) Mr. Reed also allegedly derided Ms. Angell in front of other employees, and implied that he would retaliate

2

against her if she argued with him. (Compl. ¶¶ 18-19.) Mr. Reed also allegedly made sexually suggestive comments to Ms. Angell. (Compl. ¶¶ 21, 23.)

In May 2019, Ms. Angell ran a 5k. (Compl. ¶ 20.) Mr. Reed attended this 5k and encouraged Ms. Angell to run additional 5k's with Curaleaf's sponsorship. (*Id.*) Mr. Reed allegedly promised that Curaleaf would pay Ms. Angell's registration fees for these future 5k's and would pay her normal hourly wage during the events. (*Id.*) Ms. Angell did run in subsequent races, but was not paid for doing so. (*Id.*)

In November 2019, Mr. Reed hired his personal friend Dave Bernier as Director of Sales at Curaleaf Auburn. (Compl. ¶¶ 24, 27.) Mr. Reed allegedly hired Mr. Bernier without posting the position or giving Ms. Angell a chance to apply. (*Id.*) On November 12, 2019, Mr. Reed, Mr. Bernier, and Ms. Angell walked the floor together. (*Id.*) Mr. Reed allegedly made several denigrating comments to Ms. Angell, insulting her professional competence. (*Id.*) Ms. Angell reported this conduct to Ms. Miller, who assured her that she had received other reports about Mr. Reed's behavior that day. (*Id.*) Ms. Angell alleges that many similar incidents occurred throughout the following year. (Compl. ¶¶ 28-30.) Mr. Reed also allegedly called Ms. Angell during off hours several times. (Compl. ¶¶ 24, 35.)

On or about March 5, 2020, Ms. Angell met with Mr. Reed and Mr. Bernier to discuss a possible promotion to Dispensary Manager. (Compl. ¶ 31.) Mr. Reed and Mr. Bernier allegedly told Ms. Angell that she was qualified for the position, but that she would have to wait 30 days. (*Id.*) They also asked Ms. Angell to train a new marketing employee. (*Id.*) Ms. Angell complained that she should not be required to receive calls during hours she was off work or have to come in at unscheduled times because she was an hourly employee. (*Id.*)

3

On March 20, 2020, Ms. Angell consulted with her physician about whether it was safe for her to continue working during the COVID-19 pandemic. (Compl. ¶ 38.) On the basis of Ms. Angell's hypothyroidism and anxiety, Ms. Angell's physician wrote her a note that read "unable to be in work place, able to work from home until further notice." (*Id.*) On March 30, 2020, Ms. Miller called Ms. Angell to inform her that she would not be allowed to work from home any longer because she was an hourly employee. (Compl. ¶ 39.) Ms. Angell was told that if she could not report to work, she would have to use all of her paid time off and sick leave. (*Id.*) Ms. Angell began discussing a reasonable accommodation with Curaleaf. (Compl. ¶ 40.) While engaged in these discussions, Ms. Angell also filed a complaint with the Maine Human Rights Commission on April 22, 2020. (*Id.*)

Ms. Angell was terminated by Curaleaf in July of 2020. (Compl. ¶¶ 41, 72.) Curaleaf stated that it was terminating Ms. Angell for operating a competing business in violation of the Non-Competition Agreement she signed when she was first hired by Curaleaf. (Compl. ¶ 41.) Ms. Angell had filed Articles of Incorporation for another marijuana retail business called "Blazing Jane, Inc." on March 9, 2020. (Compl. ¶ 42; Pl.'s Ex. A.) Ms. Angell filed these Articles of Incorporation naming herself and Ms. Miller as directors of the new LLC. (Compl. ¶ 43; Pl.'s Ex. A.) Ms. Miller was not terminated for her involvement in Blazing Jane, Inc. (Compl. ¶ 45.) Ms. Angell alleges that this was the first time Curaleaf had chosen to enforce the Non-Competition Agreement, despite other breaches having occurred in the past. (Compl. ¶ 46.)

Ms. Angell filed this Complaint on July 11, 2022. The Complaint alleges seven causes of action and a separately plead request for punitive damages:

Count I – Sexual Harassment and Sexual Discrimination pursuant to the Maine Human Rights Act

Count II – Retaliation under the Maine Human Rights Act

4

Count III – Violation of the Maine Whistleblower Protection Act

Count IV – Violation of Timely and Full Payment of Wages and Overtime Payment (26 M.R.S. § 626)

Count V – Intentional Infliction of Emotional Distress

Count VI – Invasion of Privacy

Count VII – Defamation Per Se against defendant Scott Reed

(Compl. ¶¶ 52-88.) All defendants moved jointly on September 12, 2022 to dismiss Counts IV-VII of the Complaint pursuant to M.R. Civ. P. 12(b)(6).

Standard

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Facts are read in the light most favorable to the plaintiff. *Id.* "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted).

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228 (quotation marks omitted). On the other hand, "a party may not proceed[] on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the

5

elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.

Discussion

Curaleaf advances five arguments on its motion to dismiss. First, Curaleaf argues that Ms. Angell is barred from asserting a claim for unpaid wages because her allegations of what wages she is owed are too vague. Second, Curaleaf argues that Ms. Angell's claim for intentional infliction of emotional distress must fail because she did not plead facts sufficient to make out a cause of action. Third, Curaleaf argues that Ms. Angell has failed to allege facts sufficient to make out a claim for invasion of privacy. Fourth, Curaleaf argues that Count VII, Ms. Angell's defamation claim, is both time-barred and insufficiently pleaded. Finally, Curaleaf argues that the exclusivity provision of the Workers' Compensation Act bars Counts V, VI, and VII of Ms. Angell's complaint.

Unpaid Wages

Curaleaf argues that in order to avoid dismissal of her claim for unpaid wages under 26 M.R.S. § 626, Ms. Angell must specifically allege the amount of hours she worked without pay, the rate of pay, when these periods of unpaid work occurred, and the total unpaid amount. (Mot. Dismiss 5.) The only support Curaleaf cites for this heightened pleading standard is *In re Wage Payment Litig.*, 2000 ME 162, ¶ 12, 759 A.2d 217, where the Law Court recited its definition of "unpaid wages" as "precisely what [is] owing when an employer does not pay an employee for work." Curaleaf invites the court to read the word "precisely" to mean that a plaintiff must allege the exact amount of hours worked without pay and how much they are owed to survive a motion to dismiss. The court disagrees.

6

Maine's notice pleading standards require only "fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins*, 2017 ME 99, ¶ 17, 162 A.3d 228. While it is true that Ms. Angell would have to prove the precise amount of unpaid wages at trial, the court does not see this as a reason to abrogate the usual requirements for notice pleading in favor of a more strict pleading regime. Some causes of action already have heightened pleading requirements. *See* M.R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") If the Legislature wished to impose heightened pleading requirements for a claim of unpaid wages, it would have made this intent clear in the text of the law.

Under Maine's notice pleading standards, Ms. Angell has sufficiently plead a claim for unpaid wages. She has alleged that she was promised to be paid her usual wage for participating in 5k runs, which she never received. Ms. Angell also alleged that she was contacted with work matters while she was not on the clock. While she has not provided a precise accounting of her alleged unpaid wages at this stage, this is an appropriate matter to explore through discovery. The standard Curaleaf asks the court to apply to the complaint is more consistent with the standard for evaluating whether there are any questions of material fact remaining on a motion for summary judgment. Dismissal would be inappropriate.

Intentional Infliction of Emotional Distress

Curaleaf argues that Ms. Angell's Complaint is too vague to support a claim for intentional infliction of emotional distress. The four elements of a claim for intentional infliction of emotion distress are ""(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and

7

must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Arregow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210 (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18). Curaleaf argues that Ms. Angell did not make specific enough averments of her emotional distress to satisfy the fourth element and did not allege any conduct extreme and outrageous enough to satisfy the second element.

Once again, Curaleaf is jumping ahead and asking the court to apply a summary judgment analysis to a motion to dismiss. Ms. Angell has plead generally that the conduct she endured from Mr. Reed and others caused her severe emotional distress, which is enough to survive a motion to dismiss. This is especially true in light of the specific allegations in the complaint, which include berating her in public, making inappropriate sexual remarks towards her during work, and other offensive conduct. The court finds that these allegations are extreme and outrageous enough to survive a motion to dismiss.

Curaleaf also argues that, to the extent that Ms. Angell is claiming that the alleged defamatory statements referred to in Count VII of her complaint are the basis for her intentional infliction of emotional distress claim, the statute of limitations should be limited to the two-year statute for defamation, slander, and libel. 14 M.R.S. § 753. There is no need for the court to address this argument separately, as the court has already declined to dismiss Count V on the basis of different allegations.

8

Invasion of Privacy

Curaleaf alleges that Ms. Angell failed to allege facts that would make out a claim for invasion of privacy. Invasion of privacy actually addresses the invasion of four distinct interests of the individual:

(1) intrusion upon the plaintiff's physical and mental solitude or seclusion;

(2) public disclosure of private facts;

(3) publicity which places the plaintiff in a false light in the public eye;

(4) appropriation for the defendant's benefit or advantage of the plaintiff's name or likeness.

*Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me. 1976). Intrusion upon seclusion is the only interest relevant to this case. In order to survive a motion to dismiss a claim of invasion of privacy by intrusion upon seclusion, a plaintiff must allege facts regarding four elements: "an (1) intentional, (2) physical intrusion (3) upon premises occupied privately by a plaintiff for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person." *Lougee Conservancy v. CitiMortgage, Inc.* 2012 ME 103, ¶ 16, 48 A.3d 774. An individual does not need to own or live on the premises to be considered its occupant for the purposes of an expectation of privacy. *Id.* ¶ 18, *see also Knight v. Penobscot Bay Med. Ctr.*, 420 A.2d 915, 917-18 (Me. 1980) (mother's personal privacy interest in a delivery room at a hospital); *Estate of Berthiaume*, 365 A.2d 792, 795 (Me. 1976) (violation of privacy to photograph a patient in his hospital room without his consent).

Curaleaf argues that Ms. Angell did not allege any facts that would support a physical intrusion on premises she occupied privately for the purposes of seclusion. Curaleaf argues that Ms. Angell's basis for the invasion of privacy claim is that she was made to pump breast milk in a shared office and in a room with a surveillance camera and she had no expectation of privacy

9

in either location. In the shared office, Curaleaf argues she knew the other woman was present, and in the room with the surveillance camera, Curaleaf argues Ms. Angell knew about the camera before she began pumping.

Once again, Curaleaf prefers to argue the facts rather than rely on the allegations of the complaint. The first element of invasion of privacy by intrusion on seclusion is intent, may be alleged generally. M.R. Civ. P. 9(b). Ms. Angell has alleged that she entered an empty office she intended to use to pump breast milk without being observed by others and noticed a surveillance camera after she started. (Compl. ¶ 12.) This alleges a physical intrusion on premises occupied by Ms. Angell for the purposes of seclusion, the second and third elements. *See* Restatement (Second) of Torts § 652B cmt. b (intrusion on seclusion "may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires.") For the last element, intruding on a nursing mother who wished to privately pump breast milk would be highly offensive to a reasonable person. Ms. Angell has plead facts sufficient to make out a claim for invasion of privacy.

Defamation

Curaleaf argues that all of the specific defamatory statements that Ms. Angell alleged cannot support a claim for defamation because they are time-barred. Maine has a two-year statute of limitations for defamation claims. 14 M.R.S. § 753. Ms. Angell's Complaint was filed on July 11, 2022. Ms. Angell acknowledges that this bars any defamation action based on statements made before July 11, 2020. Ms. Angell alleges that there may be other defamatory statements that can only be determined through discovery. However, a complaint for defamation must allege "a particular statement" to survive a motion to dismiss. *Gallagher v. Penobscot*

10

*Cmty. Healthcare*, No. CV-16-54, 2017 Me. Super. LEXIS 215, at * 28 (Mar. 21, 2017) (quoting *Smith v. Heritage Salmon*, 180 F. Supp. 2d 208, 221 (D. Me. 2002)). Ms. Angell's Complaint does not allege any particular defamatory statements after July 11, 2020, so her defamation claim is time-barred.

Exclusivity of Worker's Compensation Act

Curaleaf argues that Counts V, VI, and VII are also barred by the exclusivity provision in the Workers' Compensation Act. The Act states, in the relevant part:

> An employer who has secured the payment of compensation . . . is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18-C, section 2-807, involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries.

39-A M.R.S. § 104. In order for an injury to be compensable under the Workers' Compensation Act, the employee must "1) suffer a personal injury, 2) that arises out of and 3) in the course of the employment." *Knox v. Combined Ins. Co.*, 542 A.2d 363, 366 (Me. 1988).

Curaleaf correctly points out that the exclusivity provision is broad and generally encompasses even intentional torts. *Li v. C.N. Brown Co.*, 645 A.2d 606, 608 (Me. 1994). The Law Court has also held that intentional infliction of emotional distress claims based upon workplace conduct are barred by the exclusivity provision. *Gordon v. Cummings*, 2000 ME 68, ¶¶ 12-43, 756 A.2d 942. Similarly, "injuries resulting from sexual harassment are not excluded from the Act's coverage solely because of the sexual nature of the harassment." *Knox*, 542 A.2d at 366.

The key determination for coverage under the Act is whether the injury arises out of in occurs in the course of employment. The Law Court has said that "*both* components must be harmonized and all relevant factors analyzed to make a proper determination as to whether the

11

injury is sufficiently work-related, so it can be said to have been suffered both '*while* and *because*' the employee was at work." *Id.* (emphasis in original). This inquiry is highly fact specific and rests with the discretion of the factfinder. *Id.* 366-67.

The court is not persuaded that dismissal of Counts V and VI would be appropriate at this stage. The allegations in the Complaint are varied and may or may not be compensable under the Act. The court cannot engage in a factual inquiry to determine whether the Act applies to Ms. Angell's claims at this time.[2]

The entry is

> Defendants Remedy Compassion Center, Inc. d/b/a Curaleaf Auburn, Curaleaf, Inc., and Scott K. Reed's joint motion to dismiss Counts IV, V, VI, and VII of plaintiff Alyssa Angell's Complaint is GRANTED as to Count VII and DENIED as to the rest.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date:   January 25 , 2023

_____
Harold Stewart, II
Justice, Superior Court

---

[2] The court finds no merit in Curaleaf's remaining timeliness argument on this motion to dismiss. Ms. Angell has alleged a continuing violation under the Maine Human Rights Act, which generates an equitable exception for the usual 300-day deadline for filing a claim. *See Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998).